STATE OF CONNECTICUT *v.* JOHN F. CASTAGNA

HOUSE, C. J., BOGDANSKI, LONGO, BARBER and MACDONALD, Js.

Argued October 17, 1975—decision released January 13, 1976

*Peter J. Zaccagnino,* with whom, on the brief, was *Francis R. Sablone, Jr.,* for the appellant (defendant).

*Richard E. Maloney,* assistant state's attorney, with whom, on the brief, was *George D. Stoughton,* state's attorney, for the appellee (state).

MacDonald, J. The defendant, having been found guilty on a trial to a jury of manslaughter in the first degree in violation of § 53a-55 of the General Statutes and of unlawfully carrying a weapon in a motor vehicle in violation of § 29-38, has appealed to this court from the separate judgments entered thereon with a stipulation by counsel to combine and join the separate appeals. He has assigned error, inter alia, in the court's finding, in its denial of his motion to correct the finding, in its denial of his motion to suppress certain evidence claimed to have

been illegally obtained, in a number of evidentiary rulings, in the court's charge to the jury and in the court's failure to grant his motions for a directed verdict and to set aside the verdict.

With respect to the finding, the defendant has assigned error in the court's inclusion therein of facts unsupported by the evidence and in its refusal to find other facts as requested by him. He did not pursue this assignment in his brief or in oral argument except to contend that the court erred in refusing to add to its finding the fact that the defendant had made a motion to set aside the verdict and that such motion was denied by the court. It was not necessary for the court to include the denial of the motion in the finding and its refusal to do so was proper. "An appeal for a refusal to set aside a verdict ordinarily brings before us only the pleadings, the judgment, and the evidence before the trial court. A finding of facts ordinarily is not necessary . . . ." *Tenney* v. *Baird Machine Co.,* 85 Conn. 333, 335, 82 A. 639. Even if we were to consider the attack on the findings not to have been abandoned under such decisions as *State* v. *Brown,* 163 Conn. 52, 55, 301 A.2d 547, and *Holt-Lock, Inc.* v. *Zoning & Planning Commission,* 161 Conn. 182, 184, 286 A.2d 299, the claim that certain findings were unsupported by the evidence is tested by reference to the evidence printed in the appendices to the briefs under the rules in effect at the time this appeal was taken;[1] Practice Book §§ 627, 718, *State* v. *Brown,* supra, 55, *Grodzicki* v. *Grodzicki,* 154 Conn. 456, 460, 226 A.2d 656; and the defendant failed to print any evidence in his appendix. On the other hand, those findings specifically attacked by the defendant in his

---

[1] The appeal in this case was filed on November 17, 1972.

assignment of errors are amply supported by the evidence printed in the appendix to the state's brief and the finding requires no correction.

Since the finding, with respect to both the hearing upon the defendant's motion to suppress and upon the trial of the case to the jury, is amply supported by the evidence printed in the appendix to the state's brief, a summary of all of the evidence at this point should supply the necessary background for consideration of several of the remaining assignments of error, and from such evidence, the jury reasonably could have found the following: In the early morning hours of April 5, 1972, a Ford station wagon collided with a telephone pole near the Siesta Motel on Cedar Street in Newington, Connecticut, and two witnesses, who came to the scene immediately upon hearing the crash, found the defendant, John F. Castagna, seated on the passenger side of the front seat wearing a brown leather jacket the front of which was drenched with blood, and Thomas Forte, Jr., seated on the driver's side of the front seat directly behind the steering wheel with his hands by his side and his head back as if he were sleeping. One of the witnesses, Bernice W. Gulish, knew both Castagna and Forte. Police officers arrived at 1:38 a.m. and found that Forte, still seated behind the wheel, had no discernible pulse. A Colt .357 Magnum was found on the passenger's side of the floor and Castagna refused to answer the officers' questions as to the identity of the man behind the wheel or ownership of the weapon. The .357 Magnum was found to contain two expended and four live cartridges and Castagna was arrested by order of Sergeant William J. Cotter of the Newington police department for possession of a weapon and given the "Miranda" warn-

ings at approximately 2:10 a.m. and was taken directly to Hartford Hospital because of injuries he apparently had sustained in the accident. It was a cold night with snow on the ground. Castagna was returned from Hartford Hospital to the Newington police station at 3:15 a.m., but, when he collapsed while being booked, he was taken to New Britain General Hospital for further treatment and was returned to the Newington police station at approximately 6:15 to 6:30 a.m., at which time he was processed and placed in a cell awaiting clean clothing, for which he had telephoned his wife, and a bail bondsman. He was in a cell between approximately 7:30 and 8 a.m. when he was instructed to remove his clothing because the police wanted it. His clean clothing was brought by his wife at approximately 7:30 to 8 a.m. and the clothing he had been wearing at the time of the accident was taken by the police for laboratory examination to determine whether he had fired the weapon or had had it in his possession.

At an autopsy held at McCook Hospital on April 5, 1972, a bullet wound was found in the right ear canal of Forte, who had been pronounced dead immediately after the accident was observed, and the bullet fragments were removed from his brain. An examination of the Ford station wagon revealed a new bullet hole in the floor of the passenger side of the front seat. Laboratory examination of the jacket worn by Castagna revealed gun powder residue on the right sleeve consistent with a gun powder explosion, and a similar laboratory examination revealed no gun powder residue on the clothing worn by Forte. Castagna admitted that he alone was in the motor vehicle with Forte. Elliot M. Gross, chief medical examiner for the state of Con-

necticut, expressed the opinion that the shot which killed Forte was fired up to a distance of eighteen inches from Forte's head and classified Forte's death as a homicide.

Sergeant James M. McDonald, a firearms expert with the state police department with twenty-nine years of experience, expressed the opinion, based upon his examinations and test firings, that the bullet fragments found in Forte's skull came from the .357 Magnum found in the vehicle and that the weapon was held twenty-one inches from Forte's head when fired and also that the nitrates and nitrites found on the right sleeve of Castagna's jacket were consistent with powder blowback from a .357 Magnum pistol. Castagna was right-handed and cannot drive a car. Forte was described as "a fun-loving boy" who loved life, was never depressed, had a fear of guns and never possessed one.

The defendant contends that the court erred in allowing into evidence, over his objection, the results of tests made of his clothing that had been taken from him by the police without a search warrant approximately six hours after his arrest for violation of § 29-38 pertaining to weapons in vehicles. Specifically, he has assigned error in the court's denial of his motion to suppress such evidence as being in violation of the fourth amendment to the United States constitution and article first, § 7 of the Connecticut constitution guaranteeing security against unreasonable searches and seizures. It is his contention that the seizure of his clothing, having been made without a warrant, could not be justified as having been incident to a lawful custodial arrest under such cases as *Chimel* v. *California,* 395 U.S. 752, 89 S. Ct. 2034, 23 L. Ed. 2d 685, on the ground that "the seizure in the case at

bar took place approximately six (6) hours after the defendant was taken into custody, and the actual search took place after several hours had passed." Referring again to those of the facts previously summarized and set forth in that portion of the finding specifically "with respect to the hearing concerning the motion to suppress," the defendant was arrested on the gun charge at 2:10 a.m. on April 5, 1972; it was a very cold night with snow on the ground; and the defendant had been injured and the arresting officer ordered him taken to two successive hospitals for treatment. He was returned from the second hospital to the police station at about 6:30 a.m. and was processed there and kept in a cell awaiting the arrival of clean clothing and a bondsman until sometime between 7:30 and 8 a.m. when he was advised to remove his clothing and turn it over to the police.

In support of his claim that the admission into evidence of his clothing and the results of the tests afterwards made thereon were too remote to be incident to a valid custodial arrest, the defendant cites *State* v. *Miller,* 152 Conn. 343, 347, 206 A.2d 835, wherein we stated: "A search cannot be regarded as an incident to a lawful arrest where it is remote from it in either time or place." But in the language immediately following that statement, we mentioned the facts which supported the *Miller* decision and which differ vastly from those of the present case: "Here, the first search of the defendant's automobile was not made until two days after his arrest, and it was made in Soperton while the defendant was confined in Augusta. In no sense could it be regarded as incidental to his arrest, since it was remote from the arrest in both time and space."

The Supreme Court, in *Abel* v. *United States,* 362 U.S. 217, 80 S. Ct. 683, 4 L. Ed. 2d 668, held that searches and seizures that could have been made at the moment of arrest may legally be conducted later when the accused arrives at the place of detention. In following this rule, the federal courts of appeal have held repeatedly that clothing and other personal belongings may be seized upon arrival of the accused at the place of detention and later subjected to laboratory analysis and that the results of the tests are admissible at trial. See *United States* v. *Caruso,* 358 F.2d 184 (2d Cir.), cert. denied, 385 U.S. 862, 87 S. Ct. 116, 17 L. Ed. 2d 88; *United States* v. *Williams,* 416 F.2d 4 (5th Cir.); *Golliher* v. *United States,* 362 F.2d 594 (8th Cir.); *Whalem* v. *United States,* 346 F.2d 812 (D.C. Cir.), cert. denied, 382 U.S. 862, 86 S. Ct. 124, 15 L. Ed. 2d 100; *Evalt* v. *United States,* 382 F.2d 424 (9th Cir.).

In applying this rule to a situation strikingly similar to the facts of the case before us, the United States Supreme Court recently stated: "The police were also entitled to take from Edwards any evidence of the crime in his immediate possession, including his clothing. And the Court of Appeals acknowledged that contemporaneously with or shortly after the time Edwards went to his cell, the police had probable cause to believe that the articles of clothing he wore were themselves material evidence of the crime for which he had been arrested. [*United States* v. *Edwards,*] 474 F.2d, [1206,] at 1210 [6th Cir.]. But it was late at night; no substitute clothing was then available for Edwards to wear, and it would certainly have been unreasonable for the police to have stripped respondent of his clothing and left him exposed in his cell throughout the night. Cf. *United States* v.

*Caruso,* 358 F.2d 184, 185–186 . . . [2d Cir.], cert. denied, 385 U.S. 862, . . . [87 S. Ct. 116, 17 L. Ed. 2d 88]. When the substitutes were purchased the next morning, the clothing he had been wearing at the time of arrest was taken from him and subjected to laboratory analysis. This was no more than taking from respondent the effects in his immediate possession that constituted evidence of crime. This was and is a normal incident of a custodial arrest, and reasonable delay in effectuating it does not change the fact that Edwards was no more imposed upon than he could have been at the time and place of the arrest or immediately upon arrival at the place of detention. The police did no more on June 1 than they were entitled to do incident to the usual custodial arrest and incarceration." *United States* v. *Edwards,* 415 U.S. 800, 804–805, 94 S. Ct. 1234, 39 L. Ed. 2d 771.

We find no error in the court's denial of the defendant's motion to suppress and its admission into evidence of the defendant's clothing and the results of the laboratory tests made thereon.

The first of several claims of error with respect to rulings on evidence during the trial concerns the admission of three photographs depicting a bullet hole through the floor mat on the passenger's side of the automobile in which the defendant and the deceased man were found. In each of the pictures, some object—in one a pencil, in another a rolled piece of paper—had been inserted in the hole. The police officer who took the pictures testified that the sole purpose of these insertions was to highlight the location of the hole due to the dark conditions surrounding it and not, as claimed by the defendant's counsel, to indicate the path or trajectory.

With this explanation, which was made by counsel before the jury and was repeated in the court's charge, the court was satisfied as to the verification of the exhibits as adequate portrayals of that which they were intended to portray and properly left it to the jury to determine the weight to which they were entitled as evidence. "While the verification of a photograph is a preliminary question of fact to be decided by the trial judge, its weight as evidence is for the jury." *Cagianello* v. *Hartford,* 135 Conn. 473, 475, 66 A.2d 83. "Whether a photograph shows a situation with sufficient accuracy to render it admissible is a preliminary question for the court, whose action thereon can rarely be reviewed." *Crowell* v. *Middletown Savings Bank,* 122 Conn. 362, 370, 189 A. 172. "A photograph is not inadmissible because an explanation is necessary in order to understand it; nor is a photograph inadmissible because of marks or notations thereon, provided a witness is able satisfactorily to explain their meaning." Wharton's Criminal Evidence (13th Ed.) § 637, pp. 281–84; annot., 108 A.L.R. 1415.

Substantially the same may be said of the court's admission into evidence of a photograph of the right side of the head of the deceased, Forte, taken at the time of the autopsy for the purpose of clarifying and illustrating the testimony of James M. McDonald, a firearms expert, concerning the powder dispersion tests he had conducted to determine the distance from which the gun which caused Forte's death had been fired. The photographer, Joseph A. Labrecque, had testified at a preliminary hearing that the photograph was a correct representation. "Ordinarily . . . [a photograph] should be substantiated by testimony that it is a correct representation of the conditions it depicts, and in so far

as it is properly so authenticated it becomes evidence of those conditions." *Cagianello* v. *Hartford,* supra, 475. The court properly admitted into evidence McDonald's comparison between the powder dispersion shown on the photograph of Forte's head and that shown on the pattern tests made by McDonald under similar conditions in the laboratory, leaving it to the jury to determine the weight to be given to such evidence. It also properly admitted McDonald's opinion, based upon those tests and comparisons, as to the distance from which the gun was fired at Forte's head. "The results of a test to determine the distance from which a homicide weapon had been fired may be shown if the test was conducted under conditions substantially similar to those involved in the commission of the crime. The extent to which the conditions differ may be considered by the jury in determining the weight of such evidence. However, if the conditions are materially different, the results of the test will be excluded. Whether the test conditions were sufficiently similar is a question for the trial judge in his discretion to resolve, and his ruling will not be disturbed unless there has been an abuse of such discretion. Ordinarily, this type of test is conducted by a ballistics expert, or by a law enforcement officer or other person experienced in the use and handling of guns." Wharton's Criminal Evidence (13th Ed.) § 629, pp. 247–49; annot., 86 A.L.R.2d 611. " 'The determination of the qualification of an expert is largely a matter for the discretion of the trial court' . . . [and] [t]he trial court's decision is not to be disturbed on appeal 'unless that discretion has been abused, or the error is clear and involves a misconception of the law.' " *Siladi* v. *McNamara,* 164 Conn. 510, 513, 325 A.2d 277; *State* v. *Williams,*

169 Conn. 322, 363 A.2d 72; *State* v. *Lally,* 167 Conn. 601, 609, 356 A.2d 897; *Nash* v. *Hunt,* 166 Conn. 418, 425, 352 A.2d 773.

The defendant did not press in argument his claim that the court erred in overruling his objection to the testimony of a non-expert witness who described the removal of the body of the "victim" from the automobile, claiming an improper conclusion by a non-expert witness in the use of the word "victim" instead of "deceased." Counsel conceded in oral argument that it was "not a too important claim," and in that we agree, since Forte could have been the "victim" of an accident and not necessarily of a wrongful act. We find no error in the court's rulings on evidence.

The defendant has attacked the court's charge to the jury as being violative of his constitutional rights under the fifth and fourteenth amendments to the United States constitution, as expounded in *Griffin* v. *California,* 380 U.S. 609, 85 S. Ct. 1229, 14 L. Ed. 2d 106, in commenting on the failure of the accused to testify. More specifically, he contends that the court indirectly commented upon the failure of the accused to testify by stating, in the course of the charge, that intent ordinarily must be determined from circumstantial evidence "aside from the person's own testimony" and further that "[a] person may take the stand and testify directly as to what his or her purpose or intention was . . . ." "It is well established that it is constitutionally impermissible for a court or prosecutor to comment on a defendant's failure to testify in his own behalf. *Griffin* v. *California,* . . . [380 U.S. 609, 85 S. Ct. 1229, 14 L. Ed. 2d 106]; *State* v. *Annunziato,* 154 Conn. 41, 221 A.2d 57. The complained of phrase, standing by itself, could well be interpreted as an

oblique comment by the court on the failure of the defendant to testify. That phrase, however, must be considered in context, and the charge must be read as a whole. *State* v. *Lockman,* 169 Conn. 116, 123, 362 A.2d 920; *State* v. *Beaulieu,* 164 Conn. 620, 632, 325 A.2d 263. A phrase having a different meaning when culled from the charge will not be regarded as error when there is no 'reasonable possibility' that the jury were misled." *State* v. *Annunziato,* 169 Conn. 517, 530, 363 A.2d 1011. "This phrase has been quoted out of context. Viewed in its entirety, the portion of the charge which deals with the effect of the defendants' failure to testify was clear and correct." *State* v. *Raffone,* 161 Conn. 117, 128, 285 A.2d 323.[2]

The defendant also assigns error in the court's charge with respect to the violation of § 29-38 of the General Statutes,[3] possession of a weapon in a

[2] The court's supplemental charge, substituting the word "must" for "may" in response to an exception taken by the defendant's counsel, was as follows: "It has been brought to my attention that in the course of my instructions to you that I may have used the word 'may' instead of 'must' in connection with my instructions to you in regard to the fact that the accused did not have to take the stand. So for that reason I am going to read to you again the instructions in that regard.

I want to say this to you, that in this case, as you know, the accused did not take the stand in his own behalf. He is not required to do so, and you must not consider the defendant's exercise of his right not to testify as evidence of guilt. He may testify or not as he sees fit. The burden is on the State to prove him guilty beyond a reasonable doubt, and it is not incumbent upon him to prove his innocence. You are to draw no adverse inference or conclusion from the fact that he did not testify. There are many valid reasons why he may not testify. He has that election. There is no taint or inference to be drawn from his failure to testify. So if I made any error in that regard, I want to correct it."

[3] "[General Statutes] Sec. 29-38. WEAPONS IN VEHICLES. Any person who knowingly has, in any vehicle owned, operated or occupied by him, any weapon for which a proper permit has not been issued as provided in section 29-28 or section 53-206, or has not registered

motor vehicle. The court, after explaining the essential elements of the statute, commented on that part which provides that the presence in any vehicle of a weapon "shall be prima facie evidence of a violation of this section by the owner, operator and each occupant thereof." In *State* v. *Watson,* 165 Conn. 577, 596, 345 A.2d 532, we stated, with reference to § 29-38: "Proof of presence of a weapon in a motor vehicle, although relevant and admissible evidence on the charge made in this case, is insufficient standing alone to show a violation of the statute with 'substantial assurance.' It cannot be logically and reasonably presumed that an occupant of a motor vehicle knew of the presence of an unregistered weapon in a vehicle simply on the fact that he was an occupant. Presence alone, 'unilluminated by other facts' is insufficient proof of possession. *United States* v. *Romano,* . . . [382 U.S. 136, 141-42, 86 S. Ct. 279, 13 L. Ed. 2d 210]. Imputing knowledge of the presence of a weapon in a vehicle to an occupant without proof of any other relevant circumstances would be based on pure speculation and could not meet the standards reiterated in *Leary* v. *United States,* . . . [395 U.S. 6, 31, 89 S. Ct. 1532, 23 L. Ed. 2d 57]." The present case, however, did not present a situation of presence alone "unilluminated by other facts" as in *United States* v. *Romano,* supra, or based upon pure speculation, as in *Leary* v. *United States,* supra. Here, the jury found the defendant guilty of causing Forte's death by means of the weapon found at the defendant's feet in the motor vehicle and obviously

such weapon as required by section 53-202, as the case may be, shall be fined not more than one thousand dollars or imprisoned not more than five years or both, and the presence of any such weapon in any vehicle shall be prima facie evidence of a violation of this section by the owner, operator and each occupant thereof. . . ."

made this determination upon not only the occupancy of the vehicle by the defendant but upon other facts indicating his actual possession of the weapon. Moreover, although the court, after explaining the waiving of prima facie evidence, stated that "[p]resence would be sufficient to prove guilt," it went on to emphasize the necessity of a logical inference or presumption of knowledge by the accused of the presence of the gun.[4] The portion of the charge referring to the provisions of the statute as creating a presumption of guilt, in the light of the circumstances, constituted harmless error.

Under the appellate rules in effect at the time this appeal was taken, the defendant's claims that the court erred in denying his motions for a directed verdict and to set aside the verdict are tested by the evidence presented in the appendices to the briefs. *State* v. *Panella,* 168 Conn. 532, 533, 362 A.2d 953; *State* v. *Lally,* 167 Conn. 601, 603, 356 A.2d 897. As previously noted, the defendant failed to print any evidence in his appendix, but from that printed in the appendix to the state's brief, the jury could reasonably have found the facts set forth in considerable detail at the outset of this opinion. The evidence therein summarized, even viewed in the light most favorable to the accused, was sufficient to support the jury's verdict and to justify a finding of guilt beyond a reasonable doubt.

There is no error.

In this opinion the other judges concurred.

---

[4] After discussing the presumption raised by the presence of the weapon under the statute, the court charged: "The fact inferred must be a fact which in common knowledge leads naturally and logically to the fact inferred or presumed. You must decide that the proof of presence of the weapon in the vehicle must produce the belief that it is more probable than not that the other, the ultimate fact, that is, knowledge, and having, the word 'had,' is thereby established."