STATE OF CONNECTICUT *v.* JEFFREY J. DONTIGNEY
(13693)

PETERS, C. J., CALLAHAN, COVELLO, HULL and BORDEN, Js.

Argued May 29—decision released July 17, 1990

*Ira B. Grudberg,* with whom was *Steven J. DeFrank,* for the appellant (defendant).

*Timothy J. Sugrue,* deputy assistant state's attorney, with whom, on the brief, was *Michael Dearington,* state's attorney, for the appellee (state).

COVELLO, J. This is the defendant's appeal from his conviction, after a jury trial, of one count of the crime of murder in violation of General Statutes § 53a-54a.[1] The issues on appeal are: (1) whether the trial court properly admitted evidence of an out-of-court experiment concerning the distance from the gun to the victim at the time of firing; and (2) whether the trial court properly admitted into evidence photographs of the experimental targets and a chart summarizing the test results. We conclude that the evidence was properly admitted and, therefore, affirm the conviction.

The jury could reasonably have found the following: On August 7, 1987, Meriden police and emergency personnel found Linda Bernard, the defendant's ex-wife with whom he was again living, lying face-up on a bed

[1] "[General Statutes] Sec. 53a-54a. MURDER DEFINED. AFFIRMATIVE DEFENSES. EVIDENCE OF MENTAL CONDITION. CLASSIFICATION. (a) A person is guilty of murder when, with intent to cause the death of another person, he causes the death of such person or of a third person or causes a suicide by force, duress or deception; except that in any prosecution under this subsection, it shall be an affirmative defense that the defendant committed the proscribed act or acts under the influence of extreme emotional disturbance for which there was a reasonable explanation or excuse, the reasonableness of which is to be determined from the viewpoint of a person in the defendant's situation under the circumstances as the defendant believed them to be, provided nothing contained in this subsection shall constitute a defense to a prosecution for, or preclude a conviction of, manslaughter in the first degree or any other crime.

"(b) Evidence that the defendant suffered from a mental disease, mental defect or other mental abnormality is admissible, in a prosecution under subsection (a), on the question of whether the defendant acted with intent to cause the death of another person.

"(c) Murder is punishable as a class A felony in accordance with subdivision (2) of section 53a-35a unless it is a capital felony."

with a severe gunshot wound to her head. A bullet had entered the left temple region and exited the rear right side of the head. A .357 magnum pistol was resting upside down in her right hand. She died two days later. The defendant admitted being on the premises at the time of the shooting.

The defendant, who did not testify at trial, told the police that the victim had committed suicide with a .357 magnum pistol. There was also evidence that the defendant had a motive arising out of an earlier argument.

On February 10, 1989, the jury convicted the defendant of murder in violation of § 53a-54a. On March 31, 1989, the trial court, *Corradino, J.,* sentenced the defendant to thirty-three years imprisonment.

As part of its case-in-chief, the state introduced the testimony of Henry Lee, chief criminalist and director of the Connecticut state police forensic science laboratory. Over objection, Lee gave his opinion as to the distance of the gun, when fired, from the head of the victim. Lee based his opinion on the results of experiments conducted with the murder weapon. The experiment consisted of firing the identical type of ammunition used in the shooting at cheesecloth targets placed at various distances from the target. Lee testified that when a gun is fired, powder residue and other material is propelled out of the barrel, and either sticks to or falls off the target. He further testified that different patterns are produced when the gun is fired from different distances from the target. By comparing the patterns produced during the experiment with the powder marks found on the victim, Lee concluded that the weapon had been fired from a distance of between six and forty-two inches from the victim's head. In addition to Lee's testimony, the court admitted into evidence photographs of each of the cheesecloth targets and a chart summarizing the test results.

The defendant argues that the trial court erred in admitting Lee's opinion because the test conditions were not substantially similar to conditions prevailing at the actual shooting. The defendant further argues that because the test did not accurately recreate the actual shooting, the photographs of the cheesecloth targets and the chart of the test results were misleading. We disagree.

## I

In general, " '[t]he determination of the qualification of an expert is largely a matter for the discretion of the trial court,' " and will be disturbed only if there has been an abuse of discretion. *Siladi* v. *McNamara,* 164 Conn. 510, 513, 325 A.2d 277 (1973), quoting *Coffin* v. *Laskau,* 89 Conn. 325, 329, 94 A. 370 (1915). The defendant here does not challenge Lee's qualifications as an expert, but rather the accuracy of his experiment. In *State* v. *Castagna,* 170 Conn. 80, 90, 364 A.2d 200 (1976), this court affirmed the trial court's decision admitting into evidence results from a powder residue experiment. " 'The results of a test to determine the distance from which a homicide weapon had been fired may be shown if the test was conducted under conditions substantially similar to those involved in the commission of the crime. . . . However, if the conditions are materially different, the results of the test will be excluded.' " Id., quoting F. Wharton, Criminal Evidence (13th Ed.) § 629, pp. 247–48. As we stated in *Castagna,* " '[w]hether the test conditions were sufficiently similar is a question for the trial judge in his discretion to resolve, and his ruling will not be disturbed unless there has been an abuse of such discretion.' " *State* v. *Castagna,* supra, quoting F. Wharton, supra, p. 249; *State* v. *Vennard,* 159 Conn. 385, 395–96, 270 A.2d 837 (1970), cert. denied, 400 U.S. 1011, 91 S. Ct. 576, 27 L. Ed. 2d 625 (1971). The defendant argues that while the weapon and ammunition used in the test were

the same as in the actual shooting, the cheesecloth target was significantly different in adhesive quality and texture from human skin and, therefore, the test conditions were not substantially similar. Several jurisdictions have excluded evidence of test results based on the character of the target surface. In *People* v. *Cohen,* 50 N.Y.2d 908, 911, 409 N.E.2d 921, 431 N.Y.S.2d 446 (1980), the court held that the state failed to demonstrate that a target consisting of a live rabbit was substantially similar to human skin. In *State* v. *Bass,* 186 La. 139, 153, 171 So. 829 (1936), the court excluded evidence based on cardboard targets in the absence of testimony that the test was made under substantially similar condiditons. See also *Rowe* v. *State,* 120 Fla. 649, 655–56, 163 So. 22 (1935); *McLendon* v. *State,* 90 Fla. 272, 280–81, 105 So. 406 (1925); *Epperson* v. *Commonwealth,* 227 Ky. 404, 409–10, 13 S.W.2d 247 (1929); *State* v. *Allison,* 330 Mo. 773, 779–81, 51 S.W.2d 51 (1932); *People* v. *Fiori,* 123 App. Div. 174, 187, 108 N.Y.S. 416 (1908); *State* v. *Justus,* 11 Or. 178, 185, 8 P. 337 (1883); *Morton* v. *State,* 71 S.W. 281, 282 (Tex. Crim. App. 1902).

Courts in other jurisdictions, however, have admitted evidence from powder residue experiments where expert testimony demonstrates that the target material was substantially similar to human skin. For example, in *People* v. *Spaight,* 92 App. Div. 2d 734, 735, 461 N.Y.S.2d 118 (1983), the court admitted the results of tests using cotton targets when the "expert testified that the size of the powder residue pattern on the victim's skin would not vary because of the material used as a target in the test." The court in *State* v. *Brooks,* 16 Wash. App. 535, 540, 557 P.2d 362 (1976), admitted into evidence the results of firing tests when the state's expert "testified that the paper targets used possess[ed] an ability to retain powder tatooing . . . in a manner very similar to human skin." See also

*Thrawley* v. *State,* 153 Ind. 375, 382, 55 N.E. 95 (1899); *State* v. *Asbell,* 57 Kan. 398, 407–408, 46 P. 770 (1896); *Cooper* v. *State,* 61 Okla. Crim. 318, 322–23, 67 P.2d 981 (1937); *Irby* v. *State,* 18 Okla. Crim. 671, 685, 197 P. 526 (1920); *State* v. *Gruber,* 150 Wash. 66, 73, 272 P. 89 (1928).

" ' "In determining whether there has been an abuse of [the court's broad] discretion [in admitting disputed evidence], the ultimate issue is whether the court could reasonably conclude as it did." ' " *State* v. *Wood,* 208 Conn. 125, 130–32, 545 A.2d 1026, cert. denied, 488 U.S. 895, 109 S. Ct. 235, 102 L. Ed. 2d 225 (1988), quoting *DiPalma* v. *Wiesen,* 163 Conn. 293, 298–99, 303 A.2d 709 (1972). Lee testified that the target surface does not affect the powder pattern and that the pattern left on cheesecloth would approximate that left on human skin. He further noted that cheesecloth patterns were the same as those produced on pigskin, the substance that most closely approximates human skin. On the basis of Lee's testimony, the trial judge could reasonably have concluded that cheesecloth targets produced results substantially similar to human skin for the purposes of the test. Because the trial court could reasonably have decided that the test conditions were not materially different from the actual conditions, the trial court did not abuse its discretion in admitting the results of the experiment and Lee's opinion based on it. While there may be some differences between the test material and human skin, " '[t]he extent to which the conditions differ may be considered by the jury in determining the weight of such evidence.' " *State* v. *Castagna,* supra, 90; see also *State* v. *Johnson,* 442 So. 2d 193, 196 (Fla. 1983) (any differences between the test material and human skin went to the weight of the evidence, not admissibility); *Irby* v. *State,* supra, 685.

## II

The defendant next argues that the trial court should have excluded the photographs of the cheesecloth targets and the expert's chart of the test findings because they were deceptive and speculative.

" 'It is a general rule . . . that where [a] photograph is shown to be a faithful representation of what it purports to reproduce, it is admissible as an appropriate aid to the jury in applying the evidence . . . .' " *State* v. *DeForge,* 194 Conn. 392, 397, 480 A.2d 547 (1984), quoting *People* v. *Durrant,* 116 Cal. 179, 213, 48 P. 75 (1897). A trial judge's admission of a photograph will not be overturned absent clear abuse of its broad discretionary powers. *State* v. *DeForge,* supra, 396–97.

The defendant objected to the photographs because the underlying experiment was carried out under conditions materially different from the actual conditions. Having concluded that the trial court could reasonably have found the test conditions substantially similar to the actual conditions, we further conclude that the trial court properly admitted the photographs representing the results of the experiment.

The defendant further argues that a chart prepared by Lee explaining his test results was misleading. Generally, illustrative evidence "may be received if, in the opinion of the trial court, it will assist the jury in understanding an expert's testimony." *State* v. *Marino,* 152 Conn. 85, 99, 203 A.2d 305, cert. denied, 380 U.S. 943, 85 S. Ct. 1025, 13 L. Ed. 2d 962 (1964). The defendant argues that the chart prepared by Lee explaining his test results should have been excluded because it was based on conditions significantly different from those at the location of the crime. As noted above, however, the trial court was justified in find-

ing that the experimental conditions were not materially different and, therefore, it was not an abuse of discretion to admit the chart.

The judgment is affirmed.

In this opinion the other justices concurred.