[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This action is a petition seeking habeas corpus relief from allegedly unlawful confinement resulting from a judgment of conviction, after a jury trial, for murder, for which the petitioner received a sentence of thirty-three years imprisonment. This judgment was affirmed on appeal, State v. Dontigney, 215 Conn. 646
(1990).
In his amended petition the petitioner claims that his confinement is unlawful because his trial and appellate attorneys rendered ineffective assistance. An additional claim concerning improprieties by a prospective juror was not pursued at the habeas hearing nor argued and is considered abandoned.
Specifically, the petitioner contends that his trial attorney was ineffective in that he refused to allow the petitioner to testify on his own behalf at his criminal trial and that he failed to present an expert witness to rebut certain testimony and experimental evidence of the state's forensics expert. He contends his appellate attorney was ineffective by failing to raise, on direct appeal, the refusal of the trial court to instruct the jury on the lesser included offense of manslaughter second degree. Attorney Ira Grudberg represented the petitioner both at his criminal trial and on direct appeal.
Our Supreme Court has adopted the two-pronged Strickland test for evaluating ineffective assistance claims, Johnson v.Commissioner, 218 Conn. 403 (1991), p. 425. Under this standard, the petitioner must prove both that his trial attorney's performance was deficient, and that this deficient performance CT Page 10704 prejudiced his defense, Id. p. 424. If it is easier to dispose of the claim on the ground of insufficient prejudice, the habeas court need not address the question of counsel's performance, Pelletierv. Warden, 32 Conn. App. 38 (1993), p. 46. Because the court concludes that an examination of the prejudice component of theStrickland test is dispositive, the court proceeds to address that issue directly.
In order to satisfy the prejudice prong of the Strickland
test, the petitioner must prove, by a preponderance of the evidence, that there exists a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different, Levine v. Manson, 195 Conn. 636 (1985), p. 640. Reasonable probability means a probability sufficient to undermine confidence in the verdict, Bunkley v. Commissioner,222 Conn. 444 (1992), p. 454; that is, the petitioner must show that there is a reasonable probability that he remains burdened by an unreliable determination of guilt, Id.
 I
Assuming, arguendo, that Grudberg's representation was deficient by failing to call the petitioner to testify on his own behalf, the court finds that this omission was beneficial rather than harmful to the petitioner. The petitioner testified at the habeas hearing as to his version of the events surrounding the death of the victim, his then former wife, Linda Bernard. His live testimony was in material respects equivalent to his previous oral and written statements which he had uttered to the police shortly after the shooting.
The prosecution case was, essentially, that on August 7, 1987, in Meriden, after an evening of drinking and arguing, the petitioner shot the victim in the head with his handgun causing a fatal injury, and that he attempted to conceal his actions by placing the gun into the victim's hand, after he shot her, to create the illusion that the victim had attempted suicide. The petitioner's statements to the police described how it came to pass that the victim shot herself in his presence (Respondent's Exhibit 1 and Petitioner's Exhibit A-1, pp. 33 through 39). These statements and his testimony at the habeas hearing are, in all salient respects, the same. In his live testimony, he recounted that his back was to the victim when the shot was fired rather than facing her, as indicated in his earlier statements. The court finds this discrepancy of no benefit to the petitioner in the CT Page 10705 ultimate resolution of the case.
In sum, the jury deciding the petitioner's fate had the petitioner's version of events before it by virtue of the admission into evidence of these out-of-court statements. The jury received this information without having the petitioner's story subjected to the heat of cross-examination which, in the court's opinion, would have been devastating in this case. The court finds that no advantage would have accrued to the petitioner by testifying in his own behalf. The court accepts and agrees with Grudberg's expert opinion that the petitioner's live testimony at his trial would have had disastrous consequences for the petitioner because of the opportunity for cross-examination by the prosecutor on critical points.
Some of these critical areas are as follows: The weapon from which the fatal shot was fired was found in the victim's right
hand. The entry wound, however, was on the victim's left temple, and the exit wound was located on the back of the right side of the victim's head and below the level of the entry wound. The entry wound was a noncontact wound fired up to four feet away from the victim's head. No blood or powder residue was discovered on the victim's right hand, but such residue was found on her shoulder. The petitioner admitted retrieving the weapon, loaded with one cartridge, from a nightstand in another room, carrying that weapon to the room occupied by the victim, confronting the victim with the gun for purported reasons which the court finds utterly implausible. He avers that the victim was agile and quick enough to wrest the gun away from him despite his superior physical strength. He immediately left the premises without attempting to secure medical assistance for the victim, who was still alive when he departed, despite the fact that his sister lived downstairs from the petitioner's apartment, and, instead, drove four to five miles distance to his mother's residence. His sister saw the petitioner make a hand gesture similar to "giving the finger" to the house as he left.
Cross-examination of the petitioner in all these areas was avoided because the petitioner never took the stand. In addition, the petitioner, who was released on bail pending trial, was, by his own admission and the ample testimony of Grudberg and the petitioner's relatives on this point, under the influence of liquor throughout most of his criminal trial despite the fervent pleas by Grudberg and these relatives to coax the petitioner to curtail his drinking. The court had the opportunity to observe the CT Page 10706 petitioner's demeanor on the stand while he was sober and found the petitioner to cut a less than impressive and sympathetic figure as a witness. Compounding the shortcomings of the petitioner's testimony with his probable inebriation was likely to alienate the jury rather than add credibility to his improbable version of events. To this summary, the court also notes that the victim was found with a blackened eye and multiple contusions on her body suggesting the possibility of a recent beating (Respondent's Exhibit 9, 11, and 12, e.g.). Testifying at his criminal trial might have exposed the petitioner to having to explain away these injuries, as well as opened him up for questioning concerning his past history of physical violence toward the victim which history was brought out at the habeas hearing.
Again, the court finds that Grudberg's "error" in avoiding calling the petitioner to testify at his criminal trial worked to the petitioner's advantage rather than to his detriment.
 II
The petitioner also asserts that Grudberg was deficient in failing to present the testimony of Dr. DeForest to neutralize the testimony of Dr. Lee, one of the prosecutions's forensics experts. Dr. Lee testified that he conducted a series of test firings with respect to the production of gunshot residue patterns to determine the muzzle to target range of distances pertinent to the shooting of the victim. Lee offered an initial opinion, based on the results of these test firings, that the muzzle to target distance ranged from a minimum of twelve inches to a maximum of forty-two inches.
Before trial Grudberg consulted with DeForest regarding Lee's analysis in this regard. Grudberg also arranged for DeForest to testify at the petitioner's criminal trial, if necessary, to rebut Lee's conclusion regarding the minimum muzzle to target distance. In addition, DeForest provided Grudberg with topics to explore in Grudberg's cross-examination of Lee. DeForest, an eminent forensics expert qualified to render opinions regarding muzzle to target distance calculations based on residue patterns, agreed with Lee's estimation of the maximum distance of forty-two inches, but he felt that no specific minimum distance could be discerned except that the entry wound was made by a gun which was not in contact with the victim's head at the time of firing. Rather than opine a specific minimum distance, he described that minimum distance as "not extremely close." CT Page 10707
At the criminal trial, Lee testified and conceded that his twelve inch minimum distance was based on assumptions which were unproved, and he rendered a revised opinion modifying the minimum to six inches. Grudberg testified at the habeas hearing that he consciously declined to call DeForest as a witness because he felt that his cross-examination of Lee had accomplished all that DeForest's testimony would have been designed to do, i.e. to discredit the twelve inch minimum firing distance. The petitioner asserts that this decision constituted ineffective assistance.
Assuming, arguendo, that Grudberg was deficient in this regard, the court finds that DeForest's testimony would have had little impact on the criminal trial. DeForest's conclusion, for the most part, substantiated Lee's calculations as revised. The only difference in these expert opinions is that DeForest was reluctant to quantify a minimum firing distance whereas Lee was willing to estimate a six inch minimum distance. DeForest's characterization of this minimum distance for firing as noncontact and "not extremely close" appears consistent with Lee's six inch figure.
The significant part of the conclusions of both Lee and DeForest is that the injury was caused by a firearm which was not in contact with the victim's body. Any discrepancy between their opinions regarding fixing a minimum firing distance pales when compared with the other evidence surrounding the shooting which clearly points to a "staged" suicide. As mentioned above, the shot was fired into the left temple of the victim and from slightly above level. The victim was right-handed (Petitioner's Exhibit A-8, p. 118), and the weapon was found in her right hand. No gunshot residue or blood splatter was found on the victim's right hand.
This evidence is combined with the fact that the petitioner failed to seek medical attention for the victim but instead left the scene; that he gave the police a dubious rationale for why he would retrieve a loaded weapon and carry it to the location of a person who is threatening to kill herself, viz. to use symbolically to make a point about her putative drug abuse; and that the victim snatched the weapon from him with ease. The weight of the evidence against the petitioner remains heavy despite the absence of DeForest's live testimony.
III CT Page 10708
The petitioner also contends that Grudberg was ineffective for failing to raise, on direct appeal, the refusal of the trial court to instruct the jury with respect to the lesser included offense of manslaughter second degree. Grudberg requested such an instruction of the trial court. The trial court rejected the applicability of such an instruction (Petitioner's Exhibit A-14, p. 207). The trial court did instruct the jury on the lesser included offense of manslaughter first degree. The jury returned a verdict finding the petitioner guilty of murder.
The petitioner argues that had Grudberg pursued such a claim on appeal he would had succeeded as did the appellant in State v.Sivri, 231 Conn. 115 (1994). As the petitioner recognizes at p. 14 of his posttrial memorandum, the likelihood of success on appeal of an unpursued claim is insufficient alone to establish the prejudice necessary to satisfy the second prong of the Strickland test. InBunkley v. Commissioner, 222 Conn. 444 (1992), our Supreme Court held that, where a prisoner claims his appellate counsel's representation was deficient, the prisoner must demonstrate not only a reasonable probability that, but for appellate counsel's errors, the outcome of the appeal would have been different, but also that a reasonable probability exists that appellate counsel's errors affected the outcome of the criminal trial itself, Id., 459. In other words, appellate counsel's deficiencies must be of such a nature and magnitude so as to undermine confidence in the outcome of the criminal trial.
The court finds that the petitioner has failed to meet his burden of proving, by a preponderance of the evidence, that there exists a reasonable probability that the outcome of his criminal trial would have been different had an instruction regarding manslaughter second degree been given. The petitioner produced the testimony of a legal expert, Attorney John Williams, who opined that had such an instruction been given, the outcome of the trial would have been different. The court rejects this opinion.
Had the jury acquitted the petitioner of the murder charge, and, instead, convicted him of the lesser included offense of manslaughter first degree, the petitioner's argument might have some merit. But here the jury never reached the question of lesser included offenses because the jury convicted the petitioner of murder. It is mere conjecture that an instruction on manslaughter second degree could have affected the outcome of the petitioner's trial because the jury never reached the point of deliberating on lesser included offenses having unanimously convicted the CT Page 10709 petitioner on the greater charge of murder.
In summary, the court finds that, despite the purported errors of Grudberg, the petitioner has failed to meet his burden of proving that confidence in the verdict produced at his criminal trial has been condemned. For these reasons, the petition is dismissed.
Sferrazza, J.