THE CONNECTICUT LIGHT AND POWER COMPANY *v.*
TOWN OF MONROE

BALDWIN, C. J., KING, MURPHY, SHEA and ALCORN, JS.

Argued February 13—decided April 24, 1962

*Thomas J. Dolan,* with whom was *Albert L. Coles,* for the appellant (defendant).

*Walter F. Torrance, Jr.,* for the appellee (plaintiff).

MURPHY, J. We are concerned in this appeal with a rather narrow issue. It is whether the trial court erred in accepting the evidence presented by the plaintiff's expert on the valuation of the plaintiff's hydroelectric plant and electric transmission and distribution systems in Monroe in preference to that of the defendant's witnesses. As the defendant has abandoned the portion of its appeal having to

do with the valuations set on all the component parts of the plaintiff's system except that relating to the Stevenson dam, this opinion is restricted to the assessment of that facility.

In 1957, the Monroe assessors revalued all taxable property in the town under the provisions of what is now General Statutes § 12-62. They determined the true and actual valuation of the hydroelectric installation to be $4,554,800 for assessment purposes. They applied an 80 percent equalization factor to all property in the town, with the result that the assessed valuation of the hydroelectric installation was $3,643,840. This installation consists of the part of the Stevenson dam which lies in Monroe, a powerhouse building with generating equipment, a main substation, and a distribution substation. See General Statutes § 12-80. The value of the dam for assessment purposes was set at $2,748,000. The board of tax review refused to reduce these valuations, and the plaintiff appealed to the Court of Common Pleas. The court received evidence as to the valuations for all the plaintiff's property except those for real property and motor vehicles, which were undisputed, and made a detailed inspection of the Stevenson installation and a more modern installation at Shepaug. It found that the reproduction cost of the portion of the Stevenson dam in Monroe was $3,374,000, to which a depreciation factor of 37.5 percent should be applied. The resulting figure of $2,109,000 represented the true and actual value of the dam in 1957, on the basis of the court's conclusions, and when the 80 percent equalization factor was applied, the assessed valuation of the dam was determined to be $1,687,200 on the grand list of 1957.

Unless otherwise exempted, property in this state

is to be taxed at a uniform percentage of its present true and actual valuation, not exceeding 100 percent. General Statutes § 12-64. The present true and actual value is the fair market value. General Statutes § 12-63. The fair market value of a particular property can be determined from the figure fixed by actual sales where there are sales, in the ordinary course of business, of other properties which are comparable in kind and location. *National Folding Box Co.* v. *New Haven,* 146 Conn. 578, 584, 153 A.2d 420. Since dams are not readily marketable as such, it was proper to resort to another means of ascertaining the true and actual valuation. *Sibley* v. *Middlefield,* 143 Conn. 100, 107, 120 A.2d 77.

The court heard the testimony of three witnesses who were offered by the parties as experts in appraising the value of the plaintiff's properties. The plaintiff's expert, Robert T. Colburn, was a consulting engineer who for over twenty-five years had had extensive experience throughout the country in the design, installation, construction and repair of hydroelectric plants and dams as well as steam power and industrial plants. The court found him to be exceptionally well qualified to testify concerning the reproduction cost and valuation of the Stevenson hydroelectric installation. The defendant relied primarily on the testimony of Richard S. Nesser, who, as regional director of the firm which conducted the revaluation in the town, personally appraised the plaintiff's properties. His valuations were adopted by the assessors in making up the assessment list. The defendant also presented the testimony of Herbert K. Shay, another appraiser, but since the defendant does not rely on the method he used or the valuations computed

thereby, we need not discuss them. Both Colburn and Nesser determined their valuations by first computing the cost of reproducing the Monroe portion of the Stevenson dam in 1957. It was originally constructed in 1919 and had been repaired in 1937 and 1941. Colburn computed the reproduction or replacement cost at $3,374,000. He based his estimate on the general and detailed drawings and photographs of the dam as constructed in 1919 and subsequently repaired; his inspection of it; his experience in the construction of a more modern and efficient installation at Shepaug, upriver from Stevenson, as well as other hydroelectric projects; and the cost of labor, materials and contractors' services in the 1956 market. Nesser based his estimate on a computation of the kilowatt cost at the new Shepaug dam as applied to the kilowatt capacity of the Stevenson dam. His theoretical replacement cost was $3,436,000. The widely dissimilar approaches produced a surprisingly close result.

There was, however, a considerable difference in the percentage of depreciation which the experts applied to the reproduction cost to determine the true and actual value of the dam in 1957 for assessment purposes. Colburn was of the opinion that the useful life of the dam from the date of its construction was 100 years, taking into consideration the repairs that had been made in 1937 and 1941. The age of the dam was 37.5 years. He used a depreciation factor of 37.5 percent, based on the straight-line or age-rate method of depreciation. The resulting figure of $2,109,000 was the true and actual value, in his opinion. Nesser used what is called the straight line--remaining life depreciation accrual method in determining the true and actual

value. Based on a table which he used, he assumed at the outset that there was a 20 percent depreciation and therefore that the dam was in 80 percent good condition. He estimated the useful life of the dam as seventy years and then, by a mathematical formula, determined that the actual depreciation was 20 percent, which was the same percentage he had assumed initially as the basis for his calculations. Applying this percentage to his reproduction cost, he concluded the true and actual value to be $2,748,000.

The trial court accepted the testimony of the expert offered by the plaintiff and rejected that of the defendant's experts. This was a proper exercise of the trier's function, since the evidence to which greater credence was given was not unreasonable. *National Folding Box Co.* v. *New Haven,* 146 Conn. 578, 586, 153 A.2d 420, and the numerous cases cited therein. As a matter of fact, Shay, the second appraiser offered by the defendant, agreed that the method used by Colburn was sound and ordinarily used, although he did not use it himself because he did not have the background information on which to rely. Determination of the valuation of the properties of public utility companies presents a special problem because of the nature and construction of the component items, their use as an integral part of a system, and the obsolescence occasioned by the development of more modern facilities, as well as because of the lack of sales of comparable properties. Courts, in determining the true value of the properties of public utilities taken in eminent domain proceedings, have approved the method used by Colburn. In *State ex rel. Oregon-Washington Water Service Co.* v. *Hoquiam,* 155 Wash. 678, 286 P. 286, for example, the court

(p. 685) quotes from *City of Baxter Springs* v. *Bilger's Estate,* 110 Kan. 409, 412, 204 P. 678, relative to the acceptance of one engineer's method of appraisal in preference to that of another, and (p. 686) from *Pacific Gas & Electric Co.* v. *Devlin,* 188 Cal. 33, 46, 203 P. 1058, to the effect that the ordinary straight-line method of depreciation, in which the value is reduced in the ratio which the age bears to the life of the plant, should be applied. The decision of the trial court here is further buttressed by the detailed inspection it made of both the Stevenson installation and the more modern Shepaug installation. *Sibley* v. *Middlefield,* 143 Conn. 100, 108, 120 A.2d 77. This inspection afforded the trier a further basis, at first hand, for comparison and evaluation of the testimony of the experts.

There is no error.

In this opinion the other judges concurred.