[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This action came to the court and simultaneous briefs were ordered to be filed on August 22, 1991. This action has been brought pursuant to Connecticut General Statutes 12-118
requesting the reduction of the assessment on Newbury Commons real property. In order to prevail, the plaintiff must demonstrate that it has been aggrieved by an improper assessment laid upon its property by the assessor and that the assessment has been affirmed by the Board of Tax Review.
Since the assessment laid on the plaintiff's property was excessive and since the Board of Tax Review failed to reduce the assessment pursuant to the plaintiff's appeal, Newbury Commons is found by this court to prevail in this action.
In order to prevail in an action brought pursuant to12-118, the plaintiff must comply with the terms of the statute. Newbury Commons has been aggrieved by the doings of the Board of Tax Review as required by 12-118. This court finds Newbury Commons to be an aggrieved party.
It is undisputed that Newbury Commons is the owner of the real estate which is the subject of this appeal. The assessment laid on the property by the assessor of the city for each of the tax years at issue is also undisputed. It is also undisputed that Newbury Commons within the time prescribed by law appealed to the Board of Tax Review of the City for a reduction of the assessment made by the assessor.
The city admits in its answer to the amended complaint that the Board of Tax Review made no change in the assessed valuation of the plaintiff's property as made by the assessor. Within the time prescribed by law, Newbury Commons appealed the decision of the Board of Tax Review to this court.
On facts similar to this in Lerner Shops of Connecticut, Inc. v. Waterbury, 151 Conn. 79 (1963), the court found the plaintiff to be aggrieved. Since it is undisputed that Newbury Commons is the owner of the property in question in that it received an adverse decision from the Board of Tax Review, Newbury Commons has been aggrieved by the doings of the Board of Tax Review.
In an action brought pursuant to Connecticut General Statutes 12-118, the issue before the court is solely whether the assessment of the plaintiff's property was excessive. The matter is tried to the court as a trial de novo, and the court is empowered with broad equitable powers. The powers of the court's authority in hearing tax appeals pursuant to 12-118 are set forth in Hutensky v. Avon, 163 Conn. 433 (1972). In CT Page 10330 Hutensky the court stated, at pages 436 through 437, the following:
 An appeal from a decision of a board of tax review invokes the equitable powers of the court and is governed by General Statute Section 12-118. That section provides that "[t]he Court shall have power to grant such relief as to justice and equity appertains." The court is not limited to a review of whether an assessor's action has been unreasonable or discriminatory or has resulted in substantial overvaluation. Mere overvaluation is enough to justify redress under Section 12-118. A taxpayer who is aggrieved by the decision of the board of tax review has an appeal to the courts were the matter is tried de novo. In the appeal to the court, the ultimate question is the ascertainment of the true and actual value of the plaintiff's property. If the court finds that the property has been in fact overvalued, it has the power to, and should, correct the evaluation.
Hutensky, 163 Conn. at 436-437 (citations omitted).
In determining the true and actual value of the property, the supreme court has held that the fair market value of a particular piece of property is best ascertained by reference to comparable market sales. Uniroyal, Inc. v. Board of Tax Review, 174 Conn. 380, 385-386 (1978). In the case at bar, however, the experts for both parties testified that the comparable sales approach was not available due to the nonexistence of sales of properties comparable to the subject property. Where the comparable sales approach is unavailable, the court may look to other methods by which to determine value. Other methods for calculation of value have been approved by the supreme court, as succinctly stated in Uniroyal I, which include:
 Use of the cost of reproduction with an adjustment for depreciation; Connecticut Light Power Co. v. Monroe, 149 Conn. 450, 452, 181 A.2d 118; use of the original property cost less depreciation; Bridgeport Gas Co. v. Stratford, 153 Conn. 333, 335, 216 A.2d 439; Bridgeport Hydraulic Co. v. Stratford, 139 Conn. 388, 393, 94 A.2d 1; and the capitalization of actual income CT Page 10331 approach; Somers v. Meriden, 119 Conn. 5, 7-8, 174 A. 184.
Uniroyal I, 174 Conn. at 386.
No single method of determining value is controlling. Consideration must be given to all of the methods available in determining the value of property.
At the trial of this matter, this court was presented with conflicting testimony as to the value of the subject property. In addition, the court was presented with different opinions as to the appropriate method for appraising the property. When presented with alternate appraisal methods and appraisal results by conflicting testimony, it is the province of the trial court as the trier of fact to give credence to one expert over another. Connecticut Coke Co. v. New Haven,169 Conn. 663, 666 (1975); Connecticut Light and Power Co. v. Monroe, 149 Conn. 450, 455 (1962).
The court heard from the plaintiff's appraiser, Mr. Glendinning. The court heard from the City's assessor, Mr. Kirwin, and the City's appraiser was Mr. Derderian. Mr. Kirwin, the City's assessor, testified that the City did not use the comparable or income methods of valuing the subject property. The City used only the cost approach. Mr. Kirwin conceded that a reasonable purchaser would not base an offer to purchase a property like Newbury Commons solely on a cost appraisal basis.
The valuation method adopted by the assessor for the subject property, therefore, would not produce a price at which a willing buyer and a willing seller would agree to transfer this property. The assessment of the property established by the City is not based on the true value as value is defined by the assessor himself. Moreover, the City failed to follow12-63b of the Connecticut General Statutes. Subsection a of12-63b provides that the assessor shall for this type of property use and consider each of the following methods of appraisal:
1. replacement cost less depreciation, plus the market value of the land; 2. the gross income multiplier method as used for similar property; and, 3. capitalization of net income based on market rent for similar property.
This section was not used by the assessor since the assessor used only the cost method. CT Page 10332
The validity of the assessment placed on the Newbury Commons property by the City is likewise challenged by reference to the appraisal submitted by the City's appraiser Derderian. The assessment laid on the property by the City's assessor's office was $16,424,530.00 for the October 1, 1987 list. This assessment increased in the years 1988 and 1989 due to additional completion of the building. The assessment by the City of Stamford represents 70 per cent of the fair and actual value of the property as determined by the City. Even the City's hired appraiser, however, challenged the valuation placed on the subject property by the City. The valuation determined by the City's appraiser was $21,500,000.00. Based on a 70 per cent assessment, the assessed value as determined by Derderian is $15,050,000.00. The City's own appraiser believes that the assessed value established by the City's assessor is incorrect by almost $1,500,000.00.
As to Mr. Derderian's appraisal, he purports to have established a 1987 valuation of the property. He then trended back the value from 1987 to 1981 using Boeckh's Building Costs Index Numbers ("Boeckh"). Mr. Derderian indicated at trial that Boeckh's is not used to determine the difference over time for the valuation of land, that it does not reflect changes in income flow from real estate, and that it would not have accurately shown the increase in value of the land from 1981 to 1987. He did, however, use it for those three purposes.
The appraisal report and the testimony submitted by the plaintiff's expert, Ronald Glendinning, was a thorough, accurate and credible piece of work and testimony. Mr. Glendinning's report carefully explains each appraisal method used. It also explains and supports Glendinning's decision not to use the comparable sales approach to valuation. Details surrounding data and documentation are contained within the text of the report. The report expressly describes each individual step in the appraisal process and establishes a reasonable and supportable method to trend back present value to a 1981 assessment. His report has been exhibited as plaintiff's exhibit B.
The conclusions of Mr. Glendinning as to a 1981 fair market value of $8,300,000.00 and a 1981 assessment of $5,810.00 are accepted by this court. This court further rejects the request by the plaintiff to discount the Glendinning value 15 per cent based on the testimony of Dr. Max Kargman.
The trial court has been confronted with conflicting expert testimony and conflicting methods of appraisal. "The acceptance or rejection of an opinion of a qualified expert, such as the plaintiff's witness, is a matter for the trier of CT Page 10333 fact unless the opinion is so unreasonable as to be unacceptable to a rational mind." Connecticut Coke, 169 Conn. at 668. "In any assessment case the trial court is confronted with conflicting accounting methods; giving credence to one over the other is a proper exercise of its function as a trier of fact." Connecticut Coke, 169 Conn. at 666.
Wherefore, the court finds the following:
1. The assessments of the subject property on October 1st of 1987, 1988, 1989 and 1990 was excessive and inequitable.
2. The City of Stamford violated Connecticut General Statutes 12-63b in assessing the Newbury Commons property.
3. The report of the plaintiff's expert, Mr. Glendinning, was the most credible.
4. The true and accurate assessed value of the subject property is $5,810,000.00 as of October 1, 1981, which value should apply to all years in contention in this proceeding.
Wherefore, the court orders as follows:
1. The assessment of the plaintiff's property designated as Card Number W 58A Washington Boulevard and North Street, on October 1, 1987, October 1, 1988, October 1, 1989, and October 1, 1990, is reduced equitably and proportionately to $5,810,000.00.
2. The plaintiff is granted a tax credit for all overpayment of taxes rendered on the previous assessments of October 1, 1987, October 1, 1988, October 1, 1989, and October 1, 1990.
3. Said credit is to be applied to interest due on the sewer taxes due July 1, 1991, pursuant to the defendant's counterclaim on which judgment has been entered, and to the plaintiff's future taxes.
4. Statutory interest is awarded to the plaintiff for the amount of its overpayment of taxes from the date said taxes were paid.
5. Costs are awarded to the plaintiff.
EDWARD R. KARAZIN, JR., JUDGE