[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is an appeal by the plaintiff taken after the Board of Tax Review of the Town of West Hartford rejected a challenge to the 1989 revaluation assessment on its property at Westfarms Mall.
The plaintiff's property is located partially in West Hartford and partially in Farmington. Westfarms Mall is described as a super regional mall, and the plaintiff's property is at the northerly entrance to the mall. This appeal concerns that portion of the subject property which lies in West Hartford. The subject property, one of the anchor department stores in the mall, is owned by the plaintiff and in 1989 it was operated under the name of G. Fox Co. It was completed in 1974 and operates within a special development plan zoning district which governs the use of the shopping mall to which it is connected. Since November 1973 the subject property has also been subject to a reciprocal easement agreement (REA).
The plaintiff is a nationwide owner of department store chains which included among others on the assessment date, not only G. Fox Co. but also Lord Taylor and Filene's which took over the subject property in March, 1993. The G. Fox store is situated on land which is located at the southwest corner of New Britain Avenue and South Road. The parcel of land contains 17.435 acres, 12.257 of which is in West Hartford. The store has three exterior entrances, one each from the three parking lots surrounding the northern end of the enclosed shopping mall.
According to the measurements made by Edgar B. French, an appraiser called by the defendant, the department store building contains a gross area of 210,254 square feet, 172,769 square feet or 82.2% of which are in West Hartford. William T. Bott, an appraiser called by the plaintiff, used 212,416 square feet as the gross building area. The building is a three-level masonry and steel structure with concrete floors. It has central air conditioning, gas fired hot CT Page 5331 water heating, four escalators, two elevators, four restrooms, overhead suspended fluorescent lighting and recessed ceiling lights. Two of the three levels are connected to the core mall. The third level is accessible only from inside the store.
The interior walls are finished with paint or fabric and the floors are covered in marble and quarry tile, carpet, hardwood, and parquet. The site has 1,148 parking spaces, 857 of which are in West Hartford. The subject property and the mall owner, West Farms Associates, along with Penny's and Lord Taylor, under the REA have reciprocal rights for use of the parking, common areas and utilities located on the 82.84 acre mall site.
Westfarms Mall has 1,001,652 square feet and is located across from the Corbins Corner Shopping Parkade with 151,000 square feet of retail space and north of Builder's Square Center with 166,154 square feet of retail space. Taken together, this area comprises the largest retail area in the region with excellent access from Interstate 84, which connects with Interstate 91 both in Hartford and by way of the Central Connecticut Expressway Route 9 connector. Connecticut Transit Company provides bus access directly to the subject property.
Zoning for the area in question in West Hartford is a special development district and no change in the approved plan is allowed without West Hartford's Town Council approval. Zoning approval was granted for the existing occupancy, a retail department store.
The highest and best use of the property is a continuation of its present use as a department store.
The plaintiff has amended its appeal to include the assessment for 1990, 1991 and 1992.
The subject property was assessed by the defendant on the list of October 1, 1989, at $12,670,700. The assessment is at 70% of the fair market value which was estimated at $18,101,000. CT Page 5332
The plaintiff called William T. Bott, a qualified real estate appraiser, as an expert witness. Bott considered all three of the generally recognized methods of property valuation. Relying primarily on the sales comparison and the income approaches, he concluded that the fair market value of the subject property on October 1, 1989, was $12,300,000, and that the value of the West Hartford portion was $10,110,000. In developing the sales comparison approach, Bott used four out-of-state sales because he was unable to find sales in Connecticut which he deemed to be comparable to the subject property. None of these out-of-state sales is comparable to the subject property which is owned by the plaintiff and operated by it in the prime location in one of the most successful malls in the country. In his development of the cost approach, Bott used comparable sales in Connecticut to estimate the value of the land and the Marshall and Swift Cost Estimating Service to estimate the reproduction cost of the improvements. Before estimating depreciation, the value estimated by Bott under this approach was quite close to the value estimated by the appraiser called by the defendant under the cost approach. Bott used the four out-of-state sales and, estimating the reproduction cost of improvements and land values, concluded that a depreciation rate of 65% was appropriately applied to the improvements on the subject property. A substantial part of the depreciation rate used by Bott was due to the effect which he considered that the REA would have on the value of the subject property. This reciprocal agreement contains certain restrictions but it also contains benefits to the parties. It cannot be supposed that an anchor store which the developer desired to have in the mall would have entered into an agreement which was not beneficial to it. Moreover, the concessions which a mall developer might be constrained to make to attract an anchor store would not have to be made by the store owner in selling the store. In developing the income approach, Bott estimated the income which the subject property might be expected to generate, assuming another occupant. To estimate market rent, he reviewed a number of department store leases and studied sales and rental figures for anchor department stores as reported in Dollars Cents of Shopping Centers 1990, published by the Urban Land Institute (Dollars Cents). He concluded that 2% of CT Page 5333 gross annual sales would be reasonable as rent, estimated sales volume at $300 per square foot, deducted estimated occupancy costs and capitalized estimated net operating income to arrive at an estimate of fair market value.
The defendant called Edgar B. French, a qualified real estate appraiser, as an expert witness. French did not develop the sales comparison approach to value because he found no sales which he considered directly comparable. He developed the cost approach and the income capitalization approach and concluded that the fair market value of the West Hartford portion of the subject property on October 1, 1989, was $17,513,000. In developing his cost approach, French used five sales of land in Connecticut to estimate the value of the land and the Marshall Valuation Service to estimate the replacement cost of the building and improvements. He depreciated the building, which he estimated had a remaining economic life of 40 years, by 11%. In developing the income approach, French used the same procedure as that which Bott used. He estimated sales volume at $275.22 per square foot and estimated a somewhat smaller gross annual sales figure than Bott had estimated. The principal difference between the two appraisers in their development of the income approach is found in the fact that French concluded that 4% of gross annual sales was a reasonable rental figure.
Bott relied heavily upon the information in Dollars Cents to support his conclusion that 2% of gross annual sales was a reasonable rental figure for an anchor department store in a super regional mall. The figures in Dollars Cents are of limited value in estimating potential income and rental rates for a hypothetical tenant in an anchor store such as the subject property, which is well established and owner owned. Although there is a limited market of anchor department stores, as the plaintiff has pointed out, the superior location of the subject property makes it very attractive to a potential investor. The bargaining power which an anchor department store enjoys in lease negotiations with a mall owner would not exist in favor of a hypothetical tenant or potential buyer negotiating with the owner of the store. The owner or developer of a mall must attract anchor stores in order to bring in the CT Page 5334 smaller specialty stores typically found in a mall and therefore is willing to accept a lower rent on a percentage of sales basis than would be accepted from smaller stores. The owner of the store is under no such constraints in attempting to establish a rental value for his property.
French found support for his conclusion that 4% of gross annual sales was a reasonable rental in the Sage-Allen lease at Westfarms Mall. Lafayette Keeney, the former CEO of Sage-Allen, testified that it was not an anchor store. If it was not, it was certainly a large department store and not one of the small core stores in the mall. It occupied space referred to in the REA as Future Third Department Store. It was located so that entry to the mall could be obtained through the store, just as in the case of the other department stores described as anchors. It was reasonable for French to consider the Sage-Allen rental in estimating potential rent which the plaintiff might be able to charge a tenant leasing its property.
Both appraisers estimated sales volume at figures considerably less than that which has actually been generated at the subject property. At least in part, the lower estimate resulted from the perception that the G. Fox name was a substantial factor in producing the high volume of sales at the subject property. This perception seems undercut by the decision made by the plaintiff to change the name at the subject property from G. Fox to Filene's.
In using the cost approach, the principal difference between the two appraisals is in the percentage of depreciation each employed. A substantial part of the depreciation applied to the value of the subject property by Bott was assigned to the effect of the REA. The accrued depreciation was estimated through the use of out-of-state sales which were not really comparable to the subject property. The percentage of depreciation used by French seems high for a building with an estimated 40 years of economic life remaining.
In an appeal brought pursuant to General Statutes12-118, the problem of the valuation of property for CT Page 5335 assessment purposes is a question of fact for the trier. Gorin's, Inc. v. Board of Tax Review, 178 Conn. 606, 607. The trier arrives at his own conclusions as to value by weighing the opinions of the appraisers, the claims of the parties in light of all the circumstances in evidence bearing on value, and his own general knowledge of the elements going to establish value including his own view of the property. O'Brien v. Board of Tax Review,169 Conn. 129, 136.
The plaintiff, by its property tax representative, informed the West Hartford Director of Assessment in a letter dated November 13, 1987, that its store was about 215,000 square feet in area. This compares to 210,254 square feet used by French and 212,416 square feet used by Bott. If French had used the area supplied by the plaintiff, his depreciated reproduction cost would have been correspondingly higher. The plaintiff itself in its petition to the Board of Tax Review placed a value of $15,000,000 to $16,000,000 on the property, as evidenced by a Request for Admission with attachment which was introduced into evidence as Exhibit 7.
Although proper deference does not amount to a presumption in favor of the validity of the assessment; Stamford Apartments Co. v. Stamford, 203 Conn. 586, 589; a wide discretion is to be accorded to assessors, and unless their action is discriminatory or so unreasonable that property is substantially overvalued and thus injustice and illegality result, their opinion and judgment should control in the determination of value for taxation purposes. Burritt Mutual Savings Bank v. New Britain, 146 Conn. 669, 675. In any assessment case, the trial court is confronted with conflicting accounting methods; giving credence to one over the other is a proper exercise of its function as a trier of fact. Northeast Datacom, Inc. v. Wallingford, 212 Conn. 639; Connecticut Coke Co. v. New Haven, 169 Conn. 663, 666; Connecticut Light Power Co. v. Monroe, 149 Conn. 450,455. The burden is upon the plaintiff to prove that the assessment of its property was illegal or excessive. Birchwood County Club, Inc. v. Board of Tax Review,178 Conn. 295, 301.
Having seen the property and heard and considered CT Page 5336 all of the witnesses, and having considered all of the evidence and the claims of the parties in the light of all the circumstances, the court has concluded that the plaintiff has not proven its allegations that the valuation of the land and buildings placed thereon by the assessors and later by the West Hartford Board of Tax Review was not the fair market value thereof on the assessment date but was grossly excessive, disproportionate and unlawful.
Accordingly, the appeal is dismissed. No costs are taxed.
George D. Stoughton State Trial Referee