STATE OF CONNECTICUT *v.* RICHARD F. MEMOLI

ALCORN, C. J., HOUSE, THIM, RYAN and SHAPIRO, Js.

Argued May 5—decided June 3, 1970

*James F. Bingham,* for the appellant (defendant).

*Arlen D. Nickowitz,* assistant state's attorney, with whom, on the brief, was *Joseph T. Gormley, Jr.,* state's attorney, for the appellee (state).

ALCORN, C. J. The defendant was tried upon an information charging him with the crimes of breaking and entering a motor vehicle; General Statutes § 53-76; and larceny. General Statutes § 53-63. He was convicted by a jury and has appealed from the judgment on the verdict.

From the evidence introduced at the trial the state claimed to have proved that, in the early morning hours of December 9, 1967, the defendant and Richard Franco broke into an automobile while it was parked, with the doors locked, on a public street in Stamford and stole a sum of money which was locked in the glove compartment of the vehicle. Franco and the defendant were arrested at approximately 2:54 a.m. on the morning of the alleged crimes. They were brought immediately to police headquarters, where a police detective gave both men the warnings required by *Miranda* v. *Arizona,* 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694, after which the detective talked to each man separately. Franco and the defendant roomed in a building in Stamford known as the "Clubmen's Club". Both men consented to a search of their room at the Clubmen's Club, and Franco gave the detective a key with which to enter the building. The detective and others entered the building and searched the defendant's room, in which they found about $61 in a wooden vase under the bed and $307 in the pocket of a coat belonging to the defendant. All of the items found were admitted into evidence.

When a police detective testifying for the state began to describe his entry into the building, de-

fense counsel interrupted and the court excused the jury. Thereupon, in the absence of the jury, defense counsel made a motion to suppress any evidence obtained during the search of the Clubmen's Club. Following a hearing held in the absence of the jury, the court denied the motion to suppress and, after the jury were recalled, admitted into evidence the fruits of the search. The defendant assigns error in this action of the court.

It is conceded that the search was made without a warrant. From the hearing on the motion to suppress, the trial court found that Franco and the defendant, who lived at the Clubmen's Club, were arrested, brought to police headquarters, warned of their constitutional rights, and interrogated separately by Detective Anthony J. Scalise, that "Franco and Memoli gave Detective Scalise their consent to search *their room,*" that Franco gave Detective Scalise the key to the front door in order to enter, and that "[t]*he rooms of both Franco and Memoli were* located on the second floor of the club". (Emphasis supplied.) To understand the finding more fully, we have examined the evidence printed in the appendices to the briefs. *Quednau* v. *Langrish,* 144 Conn. 706, 711, 137 A.2d 544; Maltbie, Conn. App. Proc. § 131. There we find that Detective Scalise testified that he asked the defendant and Franco if he could search their room and they said he could. Franco gave him a key which he said would let him into the premises, and the defendant told him their room was on the second floor. Both men said he could search their room but not the whole club. The court's finding is that, thereafter, in response to an inquiry from the court as to whether the detective had had any conversation with the defendant about going to the room, the officer testified as follows:

"The witness: There was some conversation, yes, sir. And if I remember right, he didn't give me any answer at the beginning. Then when I told him that Franco gave me it already to go down, then I believe he said it was okay to go.

"The court: You believe Memoli said it was okay to go.

"The witness: Yes, sir. But this was after I told him that Franco gave me the key, you know, to go down there already."

Not every search made without a warrant is unlawful. A search which is made with the full consent of the defendant may be lawful provided the state affirmatively establishes that the consent is voluntary. *State* v. *Miller,* 152 Conn. 343, 347, 206 A.2d 835. The question is one of fact to be decided by the court upon the evidence and such reasonable inferences as can be drawn from it. *State* v. *Hanna,* 150 Conn. 457, 471, 191 A.2d 124. All of the surrounding circumstances are pertinent to the question of voluntariness. *State* v. *Hassett,* 155 Conn. 225, 230, 230 A.2d 553.

Both the finding by the court that the defendant consented to the search and the finding that the state offered evidence to prove and claimed to have proved in the trial before the jury that the defendant consented to the search are attacked as being without support in the evidence. The appendices to the briefs indicate no serious dispute that the evidence concerning consent was as we have recounted. It was upon the basis of this testimony that the trial court impliedly concluded that the defendant voluntarily consented to the search of his room. There is no express finding by the court that the consent was free and voluntary, but that conclusion is necessarily implicit in the denial of the motion to suppress the fruits of the search.

The question before us, therefore, is whether the subordinate facts found by the court are sufficient to support the implied conclusion that the consent was voluntary. See *State* v. *Hanna,* supra. In this inquiry we are confined to the portion of the finding which relates the facts which were found by the trier sitting as a court in the absence of the jury. The finding concerning the area of the search is not clear. The finding, on the one hand, is that the two men consented to the search of "their room" and, on the other hand, that "[t]he rooms of both Franco and Memoli were located on the second floor." It is thus obscure whether the consent, imputed to the defendant related to the search of a room which he occupied alone, or whether it related to a room which he shared with Franco. If, in fact, the two men occupied separate rooms and no fruit of the crimes charged was to be found in Franco's room, his assent to a search of his room is readily understandable. Beyond this, the defendant's consent is found to have been obtained when he was under arrest and while he was being interrogated at police headquarters. Franco had been interviewed first, he had consented to a search and he had given the police a key to the outside door of the club. The officer testified that, after the defendant had been told of Franco's action, "I believe he [the defendant] said it was okay to go". These circumstances differ greatly, for example, from those in *State* v. *Hanna,* supra, where the court found that "the defendant cooperated with the police, directed the route to his apartment, pointed out the closet where his clothing was and made no objection to the examination of the blood-stained clothing or the taking and retention of it by the police". Indeed, they more nearly approach a showing of "no more than acquiescence to a claim of

lawful authority," which is insufficient to establish a free and voluntary consent. *Bumper* v. *North Carolina*, 391 U.S. 543, 549, 88 S. Ct. 1788, 20 L. Ed. 2d 797. We are unable to say, upon the facts found, that the state has met the burden which the law imposes on it to prove that the defendant's consent to the search was voluntary. Consequently, the search is not shown to be a lawful one, and the admission into evidence of the items discovered in the search was erroneous.

It is unnecessary to discuss the other assignments of error.

There is error, the judgment is set aside and a new trial is ordered.

In this opinion the other judges concurred.