[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
In this proceeding, the plaintiff is appealing from the action of the board of tax review (the board) of Union concerning the valuation of the plaintiff's property on the list of October 1, 1989. On that day, the plaintiff owned an interest in two parcels of land in Union. He was the sole owner of one of the parcels, hereinafter designated as "Parcel 1;" CT Page 10641 he was also the owner of an undivided one-half interest in the other parcel, hereinafter designated as "Parcel 2." With respect to Parcel 2, the parties stipulated that the court is to decide the issues as if the plaintiff were the sole owner of that parcel also.
The plaintiff's appeal is dated June 5, 1990. In the appeal, the plaintiff claims that the valuation that the board placed on his property for purposes of taxation by Union violates Conn. Gen. Stat. sec.12-64. That statute provides that property not exempt from taxation shall be liable to taxation at a uniform percentage of "its present true and actual valuation," and the plaintiff claims that the board's valuation exceeds that "present true and actual valuation." By the provisions of Conn. Gen. Stat sec. 12-63, the words "present true and actual valuation" mean "fair market value" and "not . . . value at a forced or auction sale." The words "actual valuation, market value, actual value, fair market value, market price and fair value are synonymous in the valuation of property for assessment purposes." Uniroyal, Inc. v. Board of Tax Review, 182 Conn. 619, 623 n. 8, 438 A.2d 782 (1981). As required by statute, for purposes of local taxation Union has assessed property liable to taxation "at a uniform rate of seventy percent of present true and actual value."
By stipulation of the parties, the plaintiff's appeal has been referred to me, as a state trial referee, for a hearing and entry of judgment. In the course of the hearing, several exhibits were introduced; the court heard testimony and received appraisals from both the appraiser for the plaintiff and an employee of the appraiser engaged by Union; heard testimony from the plaintiff; viewed Parcel 1 while a passenger on a boat on the lake where Parcel 1 is located; viewed Parcel 2 on foot on those premised; and had the benefit of briefs submitted by counsel for each party. (The appraisal of the appraiser for the plaintiff will sometimes be referred to hereinafter as "the plaintiff's appraisal.")
 I
Parcel 1 is an island, about one acre in area, in the westerly part of Mashapaug Lake, a lake used primarily for seasonal recreational purposes. About one-half of the land bordering the lake is State Park land open to the public seasonally for limited hours. The land bordering the remainder of the lake is privately owned. On the privately-owned land are approximately twenty privately-owned cottages and year-round houses; much of the privately-owned land has not been developed.
The island may be reached only by boat or by swimming to it. The shore-line of the island is eroding and, as a result, the island is CT Page 10642 decreasing in size. On the island is a wood-frame, one-and-one-half-story building that is used primarily as a seasonal cabin. The interior is unfinished with exposed beams and studs. The building has about 860 square feet in area; was built during the 1940's; rests on piers; has a wood stove but no heating system; has one open porch and one small screened porch; had been reasonably-well maintained; is not serviced by any utilities; has no well, running water, or septic tank system; has double-hung windows, wood floors, wood shingle siding and an asphalt-shingle roof; and has a wood-frame outhouse as its only toilet facility.
The appraisers and the board made separate valuations for the buildings on Parcel 1 and the land that is Parcel 1, as follows:
 Union's Initial Assessment of Land: $309,900 Union's Initial Assessment of Buildings: $64,900 Total Initial Assessment: $374,800
 The board's Assessment of Land: $111,930 The board's Assessment of Buildings: $43,290 The board's Total Assessment: $155,220
 The plaintiff's Appraisal of Land: $90,000 The plaintiff's Appraisal of Buildings: $30,000 The plaintiff's Total Appraisal: $120,000
 II
In Stamford Apartments Co. v. Stamford, 203 Conn. 586, 589,525 A.2d 1319 (1987), the Supreme Court said: "[W]hen a property owner challenges the assessor's valuation, `the plaintiffs' burden . . . is a difficult one. [P]roper deference must be given to the judgment and experience of assessors. Connecticut Coke Co. v. New Haven 169 Conn. 663,668, 364 A.2d 178 (1975). The law contemplates that a wide discretion is to be accorded to assessors, and unless their action is discriminatory or so unreasonable that property is substantially overvalued and thus injustice and illegality result, their opinion and judgment should control in the determination of value for taxation purposes. Federated Department Stores, Inc. v. Board of Tax Review, 162 Conn. 77, 86, 291 A.2d 715
(1971), quoting Burritt Mutual Savings Bank v. New Britain, 146 Conn. 669,675, 154 A.2d 608 (1959).' (Emphasis added in original.) Uniroyal, Inc. v. Board of Tax Review, 182 Conn. 619, 633-34 n. 8 438 A.2d 782
(1981). While we have recognized that proper deference should be accorded to the assessor's valuation, we have never characterized such deference as a presumption in favor of the validity of the assessment which it is the CT Page 10643 plaintiff's burden to rebut." (Internal quotation marks omitted.) Although there is no presumption in favor of the validity of the assessment, the property owner has "the burden to establish that the defendant's valuation was excessive." Stamford Apartments, at 590. "The burden in such a proceeding as this, as in other actions, is upon the plaintiff to prove his material allegations." Thaw v. Fairfield, 132 Conn. 173, 179,43 A.2d 79 (1945).
As the preceding paragraph makes clear, Connecticut has an on-the-one hand, on-the-other-hand rule concerning the weight to be accorded to a valuation by the assessors. On the one hand, their valuation carries no presumption of validity. On the other hand, "Proper deference must be given to the judgment and experience of assessors . . . [P]roper deference should be accorded to the assessor's valuation." Stamford Apartments, at 589. "Proper deference" required recognition that "`the process of estimating the value of property for taxation is, at best, one of approximation and judgment and that there is a margin for a difference of opinion.'" Connecticut Coke Co. v. New Haven, 169 Conn. 663, 668,364 A.2d 178 (1975).
 II
Two appraisals of the Parcel 1 island by the plaintiff's appraiser were admitted into evidence. The first appraisal (Exhibit 1) noted, "The property is an island on a lake. Comparable sales of island are not available in the immediate market areas. Due to the lack of sales in Union, sales of properties in adjoining towns were used." The six comparables listed in the plaintiff's appraisal included three sales in Union, two in Stafford, and one in Eastford. The plaintiff's appraiser made an adjustment to each of these comparables in the amount of $45,000 for "lake frontage and location" and made adjustments for access and lot size to one or more of the comparables. After making these adjustments, the plaintiff's appraiser found the "Indicated Lot Value" of the island to be $90,000.
"In determining values by comparison, the properties must be similarly located and of like character." Thaw v. Fairfield, 132 Conn. 173,179, 43 A.2d 79 (1945). In Exhibit 1, three of the comparables are not even in Union, and none is an island. Other comparables are listed, however, in Exhibit B, which is the second and amending report of the plaintiff's appraiser and, like Exhibit 1, is dated June 9, 1991. One difference between the two exhibits is that whereas Exhibit 1 notes, "Comparable sales of island are not available in the immediate market areas," Exhibit B has added to that note the words, "except for one." That one addition is a sale to a tax-exempt organization in 1985 for CT Page 10644 $40,000. That sale, Sale # 7 A, transfers to Fairfield County Boy Scouts of America an island in Lake Mashapaug "plus 1/2 acre parcel Ferry Tavern Road" is Parcel 2. The addition of Sale # 7 A to Exhibit B, however, did not change the appraiser's "Indicated Lot Value" of the island, which remained at $90,000.
Exhibit B contains another comparable that is not listed in Exhibit 1. That is a comparable listed in the category "Comparable Sales-Dwelling" and designated as "Sale # 5 A," which refers to a sale of property on Lake Mashapaug on May 5, 1989 for $270,000. (The appraiser for the defendant reported the price as $260,000.) The sale includes two cottages and a lot of 1.7 acres with lake frontage. To compare the value of the Sale # 5 A property with the value of the island and building, the plaintiff's appraiser made a negative adjustment of $135,000 from the $270,000, making the adjusted value of the island and building $135,000. Nevertheless, the plaintiff's appraisal for the island and building remained at $120,000, (presumably $90,000 for the island and $30,000 for the building, inasmuch as earlier in Exhibit B the "Indicated Lot Value" of the island was $90,000.)
The appraiser for the defendant notes in his report, "Only one arms length market transaction on Lake Mashapaug (sic) occurred within two years of the appraisal date." The court concurs in that statement. The "one arms length market transaction" referred to in the report is the sale designated as Sale # 5 A in Exhibit B. The appraiser for the defendant made a Sale # 5 A analysis, "which included general knowledge of other waterfront properties throughout Connecticut." That analysis, he concluded, "(I)ndicated a value breakdown of $110,000 for the 1 acre building site and an additional $200.00 per front foot of waterfront," a total appraisal of $159,900. (As noted previously, the board's valuation of the island is $111,930.) The appraiser for the defendant also notes in his report: "Due to the unique nature and environment of this lake, sales in other areas of the Town of Union and sales of properties on other less desirable lakes in other communities were not used." The court is of the opinion that, for the reason the appraiser for the defendant gives, that appraisal procedure was a reasonable one to follow.
 IV
A property owner has a "difficult burden" in attempting to establish that the board's valuation is excessive. In the present case, the property owner relies upon comparables to challenge the board's valuation; that reliance makes his burden especially difficult, because his property has unique characteristics that drastically reduce the number of potentially probative comparables. Here, regarding the valuation of CT Page 10645 the island, there are only two comparables of significant probative value, i.e. Sale # 5 A and Sale # 7 A. Yet, after these were added from Exhibit 1 to Exhibit B, the plaintiff's appraiser made no change in his previous appraisals, which relied on comparables other than Sale # 5 A and Sale # 7 A. In the opinion of the court, those other comparables are not of sufficient probative value to outweigh, in the scales of proof, "The proper deference [that] must be given to the judgment and experience of assessors." Further, even without regard to the rule of "proper deference," the property owner, as noted previously, has the burden of proof on the issue of whether the assessment is excessive. After considering the exhibits and testimony, the briefs of the parties, and the observations that the court made when viewing the island, the court is of the opinion, and finds, that the plaintiff has not sustained his burden of proving that the assessment of the land that is Parcel 1 is excessive.
 V
In valuing the buildings on the island, the appraiser for the plaintiff used an approach different from that used by the appraiser for the defendant. As the court interprets Exhibit B, the plaintiff's appraiser used comparables from a "Comparable Sales — Dwelling" category, which included sales of lots with residences on them. The sale prices were then adjusted for items such as location, access, building condition, and garage, and an "adjusted value" was arrived at for the value of the island and the improvements. The value of the improvements on the island then would be the difference between (a) $90,000, his valuation of the island, and (b) the aggregated value of the island and the improvements. After making the adjustments, he found the "Indicated Value by Market Data Approach" for the island and improvements to be $120,000, indicating a valuation of $30,000 for the improvements.
The appraiser for the defendant adopted the depreciated-cost approach used by the assessors, as shown in Exhibit 2. In that approach, the appraiser for the defendant, using data from the assessor's records, which showed an estimated replacement cost of $85,492, fixed the valuation for both buildings at $61,840. The board reduces that valuation to $43,290. Even though the buildings are about 50 years old, and have been subject to vandalism, the court finds that the $30,000 valuation is too low and that the valuation of the board is well within the range of that "wide discretion . . . to be accorded to assessors." Connecticut Coke, at 668 . . The court finds that the plaintiff has not proved that the board's valuation of the buildings on Parcel 1 is excessive.
 VI
CT Page 10646 Parcel 2, which the plaintiff's appraiser valued at $20,000 and the board valued at $35,300, consists of about one-half an acre on Ferry Tavern Road, a private one-lane dirt road. The parcel is about a mile from a public street, is unimproved but partially cleared, and has no public utility services. As described in the appeal, the parcel is composed of two pieces. The first piece runs "southerly on hundred (100) feet on low water mark," giving it one hundred feet of frontage on Lake Mashapaug.
Parcel 2 has two separate and distinct sets of uses for a prospective purchaser. First, the frontage on Lake Mashapaug provides access to the lake. That access permits the owner of the parcel to use the parcel for launching a boat or for any other recreational activity requiring use of the lake. Second, the owner can use the cleared portion of the remainder of the parcel for parking vehicles, picnicking, camping, and similar recreational purposes.
The appraiser for the plaintiff impliedly recognized lake frontage as a separate increment of value by making adjustments for "potential lake frontage" in six of his "1/2 Acre Parcel Adjustments" to his "Lot-Sales" comparables. Five of those adjustments were $10,000 each and one was $20,000. The appraiser for the defendant, also, allocated a separate value to the lake frontage. He attributed 60 feet of lake frontage to Parcel 2 and valued that 60 feet at $12,000, leaving a valuation of $23,300 for the remainder of Parcel 2.
On the evidence in this case, including the court's view of Parcel 2, the court is of the opinion, and finds, that the plaintiff has not sustained the burden of establishing that the board's valuation of Parcel 2 was excessive.
 VII
The plaintiff not having proved that any of the challenged valuations of the board is excessive, judgment may enter for the defendant.
Rubinow