[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
In this proceeding, the plaintiffs are appealing from the action of the board of tax review (the board) of Union concerning the valuation of the plaintiffs' property on the list of October 1, 1989. On the day, the plaintiffs owned two parcels of land in Union. In the appeal, those parcels are designated Parcel 1 and Parcel 2; in this memorandum of decision they will be referred to by the same designations.
The plaintiffs' appeal is dated June 5, 1990. In the appeal, the plaintiffs claim that the valuation that the board placed on their property for purposes of taxation by Union violates Conn. Gen. Stat. sec.12-64. That statute provides that property not exempt from taxation shall be liable to taxation at a uniform percentage of "its present true and CT Page 10634 actual valuation," and the plaintiffs claim that the board's valuation exceeds that "present true and actual valuation." By the provisions of Conn. Gen. Stat. sec. 12-63, the words "present true and actual valuation" mean "fair market value" and "not . . . value at a forced or auction sale." The words "actual valuation, market value, actual value, fair market value, market price and fair value are synonymous in the valuation of property for assessment purposes." Uniroyal, Inc. v. Board of Tax Review, 182 Conn. 619, 623 n. 8, 438 A.2d 782 (1981). As required by statute, Union has assessed, for purposes of local taxation, property liable to taxation "at a uniform rate of seventy percent of present true and actual value."
By stipulation of the parties, the plaintiffs' appeal has been referred to me, as a state trial referee, for a hearing and entry of judgment. In the course of the hearing, several exhibits were introduced; the court heard testimony and received appraisals from both the appraiser for the plaintiffs and an employee of the appraiser engaged by Union; heard testimony from one of the plaintiffs; viewed Parcel 1 while a passenger on a boat on the lake where Parcel 1 is located; viewed Parcel 2 on foot on those premises; and had the benefit of briefs submitted by counsel for the plaintiffs and counsel for the defendant. (The appraisal of the appraiser for the plaintiffs will sometimes be referred to hereinafter as "the plaintiffs' appraisal.")
 I
Parcel 1 is an island, about one and one-third acres in area, in the westerly part of Mashapaug Lake, a lake used primarily for seasonal recreational purposes. About one-half of the land bordering the lake is State Park land open to the public seasonally for limited hours. The land bordering the remainder of the lake is privately owned. On the privately-owned land are approximately twenty privately-owned cottages and year-round houses; much of the privately-owned land has not been developed.
The island may be reached only by boat or by swimming to it. The shore line of the island is eroding and, as a result, the island is decreasing in size. On the island is a wood-frame, one-story building that is used primarily as a seasonal cabin. The interior has Beaverboard walls and ceilings; the floors are pine board and plywood. The building has about 704 square feet in area; has a kitchen area, a living room, two bedrooms, and a storage area; was built in 1940; rests on wooden sills set on the ground; has a fireplace; has a screened porch; is in fair-to-poor condition; needs extensive repairs; is not serviced by any utilities; has no running water; has wood-framed sliding windows; has wood siding; has CT Page 10635 asphalt rolled-roofing; has an outhouse; and has no toilet facilities. On the island is also a small, wood-framed storage shed in fair condition. It has board siding and rolled roofing.
The appraisers and the board made separate valuations for the buildings on Parcel 1 and the land that is Parcel 1, as follows:
 Union's Initial Assessment of Land: $322,900 Union's Initial Assessment of Buildings: $43,900 Total Initial Assessment: $366,800
 The board's Assessment of Land: $114,030 The board's Assessment of Buildings: $43,900 The board's Total Assessment: $157,930
 The plaintiff's Appraisal of Land: $95,000 The plaintiff's Appraisal of Buildings: $15,000 The plaintiff's Total Appraisal: $110,000
(Paragraph 5 of the appeal, which is admitted by the defendant, alleges the board's only action was to reduce the land assessment to $114,030, "for a total of $144,760." The $144,760 figure, the court surmises, $114,030. Because this case concerns "actual valuation," not 70% valuation, the court has used $43,900 in the foregoing schedule.)
 II
In Stamford Apartments Co. v. Stamford, 203 Conn. 586, 589,525 A.2d 1319 (1987), the Supreme Court said: "[W]hen a property owner challenges the assessor's valuation, `the plaintiffs' burden . . . is a difficult one. [P]roper deference must be given to the judgment and experience of assessors. Connecticut Coke Co. v. New Haven 169 Conn. 663,668, 364 A.2d 178 (1975). The law contemplates that a wide discretion is to be accorded to assessors, and unless their action is discriminatory or so unreasonable that property is substantially overvalued and thus injustice and illegality result, their opinion and judgment should control in the determination of value for taxation purposes. Federated Department Stores, Inc. v. Board of Tax Review, 162 Conn. 77, 86, 291 A.2d 715
(1971), quoting Burritt Mutual Savings Bank v. New Britain, 146 Conn. 669,675, 154 A.2d 608 (1959).' (Emphasis added in original.) Uniroyal, Inc. v. Board of Tax Review, 182 Conn. 619, 633-34 n. 8 438 A.2d 782
(1981). While we have recognized that proper deference should be accorded to the assessor's valuation, we have never characterized such deference as a presumption in favor of the validity of the assessment which it is the plaintiff's burden to rebut." (Internal quotation marks omitted.) Although CT Page 10636 there is no presumption in favor of the validity of the assessment, the property owner has "the burden to establish that the defendant's valuation was excessive." Stamford Apartments, at 590. "The burden in such a proceeding as this, as in other actions, is upon the plaintiff to prove his material allegations." Thaw v. Fairfield, 132 Conn. 173, 179,43 A.2d 79 (1945).
As the preceding paragraph makes clear, Connecticut has an on-the-one hand, on-the-other-hand rule concerning the weight to be accorded to a valuation by the assessors. On the one hand, their valuation carries no presumption of validity. On the other hand, "Proper deference must be given to the judgment and experience of assessors. . . [P]roper deference should be accorded to the assessor's valuation." Stamford Apartments, at 589. "Proper deference" requires recognition that "`the process of estimating the value of property for taxation is, at best, one of approximation and judgment and that there is a margin for a difference of opinion.'" Connecticut Coke Co. v. New Haven 169 Conn. 663, 668,364 A.2d 178 (1975).
 III
Two appraisals of the Parcel 1 island by the plaintiffs' appraiser were admitted into evidence. The first appraisal, Exhibit 4, noted, "The property is an island on a lake. Comparable sales of island property were not available in the immediate market areas. . . Due to the lack of sales in Union, sales of properties in adjoining towns were used." The six comparables listed in the plaintiffs' appraisal include three sales in Union, two in Stafford, and one in Eastford. The plaintiffs' appraiser made an adjustment to three of these comparables in the amount of $45,000 for "lake frontage and location; to tow of the comparables in the amount of $35,000 for "lake frontage;" and to two of the comparables in the amount of $45,000 for "lake frontage." He also made adjustments for access and lot size to one or more of the comparables. After making these adjustments, the plaintiff's appraiser found the "Indicated Lot Value" of the island to be $95,000.
"In determining values by comparison, the properties must be similarly located and of like character." Thaw, at 179. In Exhibit 4, three of the comparables are not even in Union, and none is an island. Other comparables are listed, however, in Exhibit C, which is the second and amending report of the plaintiffs' appraiser; it is, like Exhibit 4, dated June 9, 1991. One difference between the two exhibits is that whereas Exhibit 4 notes, "Comparable sales of island property were not available in the immediate market areas," Exhibit C substituted for that sentence this one: "Only one island sale was available in the CT Page 10637 immediate market areas except for one." The "one island sale" listed, in the "Lot Sales" category in Exhibit C, is a sale to a tax-exempt organization in 1985 for $40,000. That sale, Sale #7, transfers to Fairfield County Boy Scouts of America an island in Lake Mashapaug "plus 1/2 individual interest in 1/2 acre parcel Ferry Tavern Road. The addition of Sale #7 to exhibit C, however, did not change the appraiser's "Indicated Lot Value" of the island, which remained at $95,000.
Exhibit C contains another comparable that is not listed in Exhibit 4. That is a comparable listed in the category "Comparable Sales-Dwelling" and designated as "Sales # 5 A." That is a sale of property with frontage on Lake Mashapaug. This sale took place on May 5, 1989, at a price of $270,000. (The appraiser for the defendant reported the price as $260,000.) The sale includes two cottages and a lot of 1.7 acres. To compare the value of the Sale # 5 A property with the value of the island and buildings, the plaintiff's appraiser made a negative adjustment of $140,000 from the $270,000, making the adjusted value of the island and buildings remained at $110,000 (presumably $95,000 for the island and $15,000 for the building, inasmuch as earlier in Exhibit C the "Indicated Lot Value" of the island was $95,000.)
The appraiser for the defendant notes in his report, "Only one arms length market transaction on Lake Mashapaug (sic) occurred within two years of the appraisal date." The court concurs in that statement. The "one designated as Sale # 5 A in Exhibit C. the appraiser for the defendant made a Sale # 5 A analysis, "which included general knowledge of other waterfront properties throughout Connecticut." That analysis, he concluded, "(I)ndicated a value breakdown of $110,000 for the 1 acre building site and an additional $200.00 per front foot of waterfront." He valued the 1.33 acres and 250 feet of lake frontage of Parcel 1 at $160,900. The appraiser for the defendant also notes in his report: "Due the Town of Union and sales of properties on other less desirable lakes in other communities were not used." The court is of the opinion that, for the reason the appraiser for the defendant gives, that appraisal procedure was a reasonable one to follow.
 IV
A property owner has a "difficult burden" in attempting to establish that the board's valuation is excessive. In the present case, the property owners rely upon comparables to challenge the board's valuation; that reliance makes their burden especially difficult, because their property has unique characteristics that drastically reduce the number of potentially probative comparables. Here, regarding the valuation CT Page 10638 of the island, there are only two comparables of significant probative value, i.e. Sale # 5 A and Sale # 7 A. Yet, after these were added from Exhibit 4 to Exhibit C, the plaintiffs' appraiser made no change in his previous appraisals, even though those previous appraisals relied on comparables other than Sale # 5 A and Sale # 7 A. In the opinion of the court, those other comparable are not of sufficient probative value to outweigh, in the scales of proof, "The proper deference [that] must be given to the judgment and experience of assessors." Further, even without regard to the rule of "proper deference," a property owner, as noted previously, has the burden of proof on the issue of whether the assessment is excessive. After considering the exhibits and testimony, the briefs, and the observations that the court made when viewing the island, the court is of the opinion, and finds, that the plaintiffs have not sustained their burden of proving that the assessment of the land that is Parcel 1 is excessive.
 V
In valuing the buildings on the island, the appraiser for the plaintiffs used an approach different from that used by the appraiser for the defendant. As the court interprets Exhibit C, the plaintiffs' appraiser used comparables form a "Comparable Sales — Dwelling" category, which included sales of lots with residences on them. The sale prices were then adjusted for items such as location, access, building condition, and garage, and an "adjusted value" was arrived at for the value of the island and the improvements. The value of the improvements on the island then would be the difference between (a) $95,000, his valuation of the island, and (b) the aggregated value of the island and the improvements. After making the adjustments, he found the "Indicated Value by Market Data Approach" for the island and improvements to be $110,000, indicating a valuation of $15,000 for the improvements.
The appraiser for the defendant adopted the depreciated-cost approach used by the assessors, as shown in the assessor's "property assessment record" annexed to Exhibit 6. In that approach, the appraiser for the defendant, used data from the assessor's records. These data showed an estimated replacement cost of $60,485 for the improvements and depreciated value of $41,000. The appraiser for the defendant also fixed the depreciated value of the improvements at $41,000. The court concurs in that valuation of $41,000. The court will, therefore, order judgment entered reducing the valuation of the improvements on Parcel 1 from $43,900 to $41,000.
VI CT Page 10639
The land portion of Parcel 2 consists of a lot with frontage on Lake Mashapaug. The lot measures 100 feet by 100 feet. It is situated on on Ferry Tavern Road, a private one-land dirt road, and is about a mile from a public highway. On the lot are a wood-framed cottage and storage shed. The cottage has a kitchen, living room, two bedrooms and a bath; a total area of 704 square feet; a full basement with a partially-finished storage room; pineboard walls; and asphalt-shingle roof; double-hung windows with screens; drywall walls and ceilings; vertical board walls; carpeted floors; a screened porch; a 100-ampere electrical wiring system; and a fireplace. The cottage is serviced by electricity, telephone service, septic tank system and a dug well. The cottage is in average condition, but the storage shed is in need of repairs.
The appraisers and the board made separate valuations for the buildings on Parcel 2 and the land that is Parcel 2, as follows:
 Union's Initial Assessment of Land: $86,000 Union's Initial Assessment of Buildings: $60,100 Total Initial Assessment: $146,100
 The board's Assessment of Land: $86,000 The board's Assessment of Buildings: $60,100 The board's Total Assessment: $146,100
 The plaintiff's Appraisal of Land: $48,000 The plaintiff's Appraisal of Buildings: $57,000 The plaintiff's Total Appraisal: $105,000
After considering the testimony and viewing the improvements on Parcel 2, the court is of the opinion, and finds, that the plaintiffs have not proved that the board's valuation of the improvements on Parcel 2 is excessive.
In Section IV of this memorandum, the court discusses the comparables used by the plaintiffs' appraiser in evaluating the Parcel 1 island. The court concluded then that the comparables used by the plaintiffs' appraiser in making his evaluations were not of sufficient probative value to outweigh the "proper deference" that must be accorded to the judgment and experience of assessors. Those comparables were also used by the plaintiffs' assessor in evaluating the Parcel 2 lot.
The appraiser for the defendant appraised the Parcel 2 lot at $86,000. As noted previously, he analyzed a May, 1989, Mashapaug Lake sale; made that analysis with "a general knowledge of other waterfront properties throughout Connecticut;" and arrived at a unit valuation of CT Page 10640 $110,000 for a one-acre building site and an additional $200 per front foot for lake frontage. In evaluating the Parcel 2 lot, he made a size adjustment to give effect to the higher proportionate value of the smaller parcel and arrived at an adjusted value of $66,000 for the two-tenths acre, and a value of $20,000 for the 100 feet of lake frontage.
As noted previously, Connecticut law imposes a difficult burden on those who challenge the valuations of municipal assessors. The comparables used by the plaintiffs' appraiser to mount that challenge did not meet that burden. After considering the evidence in this case, including the court's view of the Parcel 2 lot, the court is of the opinion, and finds, that the plaintiffs have not sustained the burden of establishing that the board's valuation of the Parcel 2 lot is excessive.
 VII
Judgment may enter (a) reducing the board's valuation of the improvements in Parcel 1 from $43,900 to $41,000 and (b) finding all other issues for the defendant. Counsel for the defendant is to draft the judgment file and submit it to counsel for the plaintiffs for approval. If counsel are unable to agree on the form of the judgment file, counsel for the defendant is to notify the court, and the court will schedule a hearing on the matter. If counsel are in agreement, counsel are to endorse their approval on the judgment file and submit it to the clerk.
Rubinow