[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
Plaintiff brings this action pursuant to § 12-117 of the General Statutes to appeal from a decision of the defendant, City of CT Page 4314 Waterbury's, Board of Assessment Appeals. This appeal encompasses the Grand Lists of 10/1/95, 10/1/96, 10/1/97, 10/1/98, 10/1/99 and 10/1/2000.
From the parties admissions and the credible evidence presented at trial, the court finds the following facts: The real property that is the subject of this appeal consists of an irregular shaped parcel of land containing 14,420 square feet located along the eastern side of South Main Street and the western side of Brook Street in the Downtown Central Business District of the City of Waterbury. The property is improved with a three-story 30,367 square foot brick and wood framed building. The building was constructed circa 1830 and thereafter provided retail space for the Miller and Peck Store and later for the Tom McCann Shoe Store. It was converted into office space in 1991 and became home to Centerbank Mortgage Co., however, it has been vacant for the last several years. It is known as 43 South Main Street and also known as the "Miller and Peck Building" and is owned by the plaintiff, Buselli Associates.
On December 1, 1978, the subject property was purchased for approximately $178,000 by the City of Waterbury's Urban Renewal Agency as part of a revitalization plan.
At the time of the purchase, the premises were in good condition. The structures were intact, weather tight and contained operating mechanical and electrical systems.
After its purchase, the Renewal Agency shut down the retail business being operated at the site.
The premises were still in good condition when the defendant City last performed its city-wide revaluation of real estate effective with the Grand List of October 1, 1980. At that time, the City assessed the subject property at $273,000.00 which represents 70% of the Fair Market Value determined by the City to be $390,000.00. Thereafter, the building's condition deteriorated greatly from the results of neglect, to wit: holes developed in the roof, several fires broke out in the building, the property was vandalized, it became insecure from the weather, the basement flooded and the walls ceiling, windows, floors, electrical and mechanical systems were severely damaged or destroyed.
In 1983, the Renewal Agency, in an arms length transaction, sold the property in its dilapidated condition to the plaintiff for $5,000.00. Pursuant to its contract with the City and in recognition of the structure's historical significance to the downtown, the plaintiff repaired and restored the building without significant harm to its architectural design. CT Page 4315
In 1991, as a result of plaintiff's repairs and renovations, the City reassessed the property at $601,000.00 which represents 70% of the fair makes value determined by it to be $858,000.00. of the opinion that the defendant's assessment was grossly excessive, the plaintiff appealed to the City's Board of Assessment Appeals and the Board reduced the assessment to $501,000.00, which represents 70% of the fair market value then determined by the Board to be $715,710.00. In other words, the subject premises are currently assessed at $16.50 per square foot, which is 70% of the property's Fair Market Value of 23.57 per square foot. Again, the plaintiff claims that this assessment is grossly excessive, disproportionate and illegal.
Plaintiff contends that the repairs and renovations it made to the building merely restored it to the condition it was in at the time of the 1980 city-wide revaluation and that the assessment should reflect that fact.
Defendant claims that the renovations are substantial, greatly enhanced the value of the building and the present assessment is fair and reasonable. of course, this issue of value is made more perplexing because the court must determine the Fair Market Value of the renovated commercial structure as of October 1, 1980, the date that the defendant City last performed city-wide revaluation.
It is axiomatic that a plaintiff challenging the tax assessor's valuation of property bears a heavy burden. Connecticut courts have repeatedly held that wide discretion will be given to assessors, and "unless their action is discriminatory or so unreasonable that property is substantially overvalued so that injustice and illegality results, their opinion and judgment should control in the determination of value of property for taxation purposes. Stamford Apartment Co. v. Stamford,203 Conn. 586, 589 (1987), citations omitted.
Further, a municipality is not required to present affirmative evidence that its assessor's determination is "not unjust" and the trial court may render judgment for the municipality solely on the basis that he or she does not find the taxpayers appraiser's method of valuation persuasive.Ireland v. Wethersfield, 242 Conn. 550, 557-558 (1998). Only if the court finds that the property has been overvalued by the assessor can it exercise its power to correct the valuation. Hutensky v. Avon,163 Conn. 433, 437 (1972). "Proper deference must be given to the judgment and experience of assessors;" Connecticut Coke Co. v. NewHaven, 169 Conn. 663, 668 (1975), however, such deference is not a presumption in favor of the validity of the assessment which it is the taxpayer's burden to rebut, Stamford Aqartments Co. v. Stamford, CT Page 4316203 Conn. 586, 589 (1987); and when the taxpayer is found to be aggrieved by the decision of the board of tax review, namely, that its decision will result in the payment of an excessive, unjust and therefore illegal tax, the court may then proceed to exercise its broad discretionary power to grant such relief as is appropriate, Gorin's, Inc. v. Board of TaxReview, 178 Conn. 606, 608; and the court finds such aggrievement in the case at bar.
During the trial, the court heard testimony, for the plaintiff, from appraisers Walter J. Kloss and Robert Nocera, and for the defendant, from Armand Carbone, the City's appraiser. All three utilized the comparative sales approach to value the subject premises and their respective analysis's included a number of the same properties. Overall, however, the court subscribes more weight to the testimony of the plaintiff's experts, grounded as it is, in their significant training, experience and comprehensive review. This opinion is further buttressed by and in light of the circumstances in evidence bearing upon values and the court's own general knowledge of the elements going to make value. With this said, however, the court still does not accept their valuation as accurately stating the property's 1980 fair market value.
While the court finds as claimed by the plaintiff, that the restoration of the building, at a cost of approximately $282,000.00, was necessary to bring it back to the condition it was in as of the date of the last city-wide revaluation, and that the damage necessitating such repair and restoration was done to the property during the defendant City's ownership, after the 1980 reevaluation, the addition of a passenger elevator to service the three-story building, where no passenger elevator previously existed, was a substantial improvement that wasn't adequately factored into the appraisers' calculations. The elevator and the adjacent lobby area on each floor allow a more complete and easy access to the entire building and future division of the floor space into individual offices.
As previously indicated, the fair market value of 43 South Main St. as determined by the defendant for the 1980 assessment was $390,000 and the assessed value $273,000.00. Plaintiff's appraisers argue that the property's fair market value as of that date should be $374,000.00 and the 70% assessed value $261,800.00. Both of plaintiff's appraisers claim that the City's 1980 assessment is excessive. The court, however, is of the opinion that plaintiff's values, to more accurately reflect the fair market value of the property, including the increase resulting from construction of the passenger elevator, must include the $390,000.00 value set by the City on its October 1, 1980 list and the elevator construction costs of approximately $50,000.00. The court finds the sum total of the two, $410,000.00 to be the fair market value of the subject CT Page 4317 property as of October 1, 1980, and further finds the 70% assessment to be $287,000.00.
Wherefore, it is hereby ordered that the city of Waterbury shall reduce the assessment on the building known as the Miller and Peck Building located at 43 South Main Street, Waterbury, Connecticut from $501,000.00 to $287,000.00 for the grand list October 1, 1995 and each grand list thereafter through October 1, 2000.
THOMAS G. WEST, J.